## Solomon T. Fish v. Kanawha Dispatch.

### Gen. No. 11,788.

1. CORPORATE EXISTENCE—*how questioned.* The only way to raise the question as to whether a plaintiff suing by a name which imports a corporate existence, is or is not a corporation in fact, is by a plea of *nul tiel* corporation.

2. CORPORATE EXISTENCE—*when may be denied.* A railroad company which compels shippers to ship, if at all, over a connecting line in the name of that line, cannot question the right of a shipper, when sued in that name, to object to the right of the plaintiff to maintain an action, or to deny, as in the present case, the corporate existence of the agent.

3. NUL TIEL CORPORATION—*character of plea of.* The plea of *nul tiel* corporation is not a plea in abatement, but is in bar of the action.

4. RIGHT TO SUE—*when plaintiff has not.* Where the plaintiff sues in a corporate name, but does not aver a corporate existence, the defendant may, by plea of *nul tiel* corporation, question the right of such plaintiff to maintain the action; and where the evidence shows the non-existence of the plaintiff as a corporation, the defendant is entitled to a verdict.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1904. Reversed and remanded. Opinion filed February 20, 1905.

**Statement by the Court.** This is an appeal from a judgment for $1,007.41, recovered in an action of assumpsit by appellee against appellant. The declaration consists of the common counts. The defendant, appellant here, pleaded

the general issue, the Statute of Limitations and *nul tiel* corporation.   There were three defendants originally, but the suit was dismissed as to two of them, who were sued as partners of Solomon T. Fish, it appearing that Fish had no partner, but did business in the name of S. T. Fish & Co.

The plaintiff offered in evidence Exhibits A, B, C and D. Exhibit A, if there was such exhibit, is not abstracted.   Exhibit B is a receipted account or bill against the Chesapeake and Ohio Ry. Co. as debtor to S. T. Fish & Co., and is for loss in the transportation of ninety-six tubs of butter shipped from Chicago to Hampton, Virginia.   It appears from the bill that the butter was shipped from Chicago in a refrigerator car, but when it reached Cincinnati it was transferred by mistake of an agent to a box car, and when it arrived at Phoebus, Virginia, the tubs had fallen down, and their contents were on the floor.   Consequently, the consignee refused to receive them.   The loss was estimated at $1,007.41, and that amount was receipted for, date April 5, 1893, to the Chesapeake and Ohio Ry. Co. by S. T. Fish & Co.   Exhibits C and D show that February 28, 1894, the defendant Fish sent a bill to the plaintiff for the same loss, and that March 17, 1894, the defendant received $1,007.41, in full payment of the claim.   This was all the evidence for the plaintiff.   The plaintiff offered no evidence of its incorporation, and it is admitted in the printed statement of the cause by the defendant's counsel, that it is not a corporation.   Counsel say: "In the declaration it is not alleged to be a corporation. The proof shows that it is the name used to designate a through freight line.   It is a name adopted by, and under which, certain connecting railroad and steamship companies do a through business.   It is the business of the railroad or steamship companies involved in the particular shipment.   'Through freight,' as meant when applied to Kanawha Dispatch, must be freight which is to be carried over all or parts of at least two connecting lines.   If a shipment is a through shipment from one terminus to another of the same company, then it is not named Kanawha Dispatch business; but is done in the name of that

company alone. If the shipment is over all or a part of the line of one company, and over all or a part of the connecting line of another company, then it is named Kanawha Dispatch business, but in that case it is the business only of the two connecting lines or companies so interested. If the shipment involves three connecting lines or companies, then it is the business alone of those three companies, though done in the name of the Kanawha Dispatch."

The evidence for the defendant shows conclusively that "Kanawha Dispatch" is merely a name, and that the plaintiff is not a corporation *de jure* or *de facto*, and is not a human being.

NEWMAN, NORTHRUP, LEVINSON & BECKER, for appellant.

CURTIS H. REMY and EDWARD P. VAIL, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for appellee in his argument says: "There is really only one ultimate question involved, and that is: is this judgment for the plaintiff in the name of the Kanawha Dispatch legal?" In this we concur. It is not averred in the declaration that the Kanawha Dispatch is a corporation. But by suing in that name it assumed to be a corporation. The name imports corporate existence. Partners adopting that name could not sue in the partnership name, but only in the individual names of the partners. It is not the name of a person, as the evidence shows. A demurrer would not lie, because the court could not know, from inspection of the declaration, that the plaintiff was not a corporation, but only that it assumed to be a corporation. The only way to raise the question as to whether plaintiff is or not a corporation, was by the plea of *nul tiel* corporation. This imposed on the plaintiff the burden of proving that it was a corporation. Bailey v. Valley Nat. Bank, 127 Ill. 332, 340. The plaintiff not only failed to offer any evidence of its corporate existence, but its counsel admit, in the statement of the case in this court, that the persons acting under the name of Kanawha Dispatch are

the mere agents of the railroad companies over whose lines way-bills are issued in the name Kanawha Dispatch. The plea *nul tiel* corporation is not a plea in abatement, as appellant's counsel contend, but is in bar of the action. Town of Lewiston v. Proctor, 27 Ill. 414; Hoereth v. Franklin Mill Co., 30 Ib. 151, 157.

The plea says, in effect, that the plaintiff has no cause of action. But counsel contend that appellant contracted with appellee in the name of the Kanawha Dispatch, and quotes, in support of the proposition, appellant's receipt of March 17, 1894. We cannot perceive how this estops appellant from setting up the fact that appellee is not a corporation. If the railroad companies, as the evidence shows, established a line of traffic over their roads by the name Kanawha Dispatch, then every shipper over two or more of the roads on that line had to deal with their agency, the Kanawha Dispatch. Certainly railroad companies which compel shippers to ship, if at all, over their connecting lines, in the name of the line, cannot question the right of a shipper, when sued in that name, to object to the right of the plaintiff to maintain an action, to deny, as in the present case, the corporate existence of the agent. Crawford Tillinghast, assistant general freight agent of the C., C., C. & St. L. Railroad Co., commonly known as the Big Four, testified: "A fast freight line has agents who solicit business for the members of that fast freight line. They do it under the supervision of the officers of the different roads in whose territory they may be placed. They issue through bills of lading, and the property is billed through from the point of origin to destination at through rate, and the revenue is divided among the roads who are members of the line who transport the business. If a shipment went from Chicago to Richmond the revenue would be divided between the Chesapeake & Ohio road and the Big Four road and the Seaboard Air Line. From Chicago to Baltimore the Big Four, the Chesapeake and the Pennsylvania road would handle the business. The Kanawha does not get any of the money; it goes to the roads who are mem-

bers. A fast freight line always appoints a general manager. Thornton Lewis is general manager for the Kanawha Dispatch. He lives at Cincinnati, and is appointed by the freight agents of the various roads who have combined together for the purpose of securing freight, and they use the name 'Kanawha Dispatch' simply for convenience." This witness further says: "I am familiar with the name Kanawha Dispatch. It is not a human being. The name stands for a fast freight line."

But counsel say: "The Kanawha Dispatch had an organization, consisting of directors, a general manager, treasurer and other officers." Counsel very prudently refrain from saying that it had a corporate organization. This it never pretended to have. On this subject Tillinghast testified: "The Kanawha Dispatch has a board of directors. I do not recall them all. The general freight agent of the Chesapeake & Ohio Railroad is one of them. I am not a member. I think the general freight agent of our road is. I do not mean a board of directors like the board of directors of our railroad. All fast freight lines have a board who regulate their affairs, and they generally call them a board of directors." This witness further testified: "The Kanawha Dispatch has no president. They have a treasurer, George Hood. I think Lewis appoints him. He is practically a clerk, and he's called a treasurer for convenience. They are employees of the Kanawha Dispatch and are paid by them. The offices they hold in the railroad gives them the right to appoint a manager of the freight business. They are not stockholders in the Kanawha Dispatch. It is called a board of directors. They meet once a year and have a little talk about the way the business has been handled and the way it ought to be handled. It is simply a name to designate them, and they are not regularly elected directors."

Counsel cite Fitzpatrick v. Rutter, 160 Ill. 282, in support of its contention that plaintiff may recover in the name in which it sued. In that case the Switchmen's Mutual Aid Association, as stated in the opinion, had an

organization, consisting of directors, a president, secretary and other officers, and authenticated its acts by a common seal, and the court say:  "We think, from an examination of the record, the Appellate Court was justified in finding from the evidence that the association was a *de facto* corporation." The suit was against the association, and service was had on its secretary. The court, however, also held that, conceding that the defendant was only a voluntary association, its members being scattered over almost every State of the Union and Canada, service on all would be practically impossible, and say:  " Where the parties are numerous and it is impracticable to bring all before the court, as in this case, service upon a part, who act for other members of the association as well as themselves, will be a sufficient service upon the whole.   Guilfoil v. Arthur, 158 Ill. 600.   In the case under discussion, the service, as appears from the sheriff's return upon the summons, was had upon the ' Switchmen's Mutual Aid Association of America, by delivering a copy thereof to W. A. Simsrott, secretary of said company, this 5th day of December, 1893, the president not found in my county.'   This, we think, under the exception above referred to, was a sufficient notice to the association, and adequate service to give the Circuit Court jurisdiction."

Clarkson v. E. & N. S. Dispatch, 6 Ill. App. 284, is also cited by appellant's counsel. The appellee had been sued by the appellant and judgment had been recovered against it, and an execution had been returned *nulla bona.* A bill was filed in equity against certain railroad companies, charging them with a constructive trust, by reason of their having received the earnings of the Erie & N. Shore Line, etc.   The court, after holding that the judgment at law against the Erie & N. Shore Line could not be collaterally attacked in the equity suit, proceeded to say of that association:  " It held itself out to the public as a common carrier for the public in that name; had officers and agents, and contracted with the plaintiff in that name," and held it was estopped to deny its corporate existence.

This, after holding that the judgment could not be collaterally attacked. The case, we think, has no application here. Quite a different question would be presented if the Kanawha Dispatch were defendant, as was the Erie & North Shore Line in the case cited.

Cases in which it has been held that the defendant, sued as a corporation, may be estopped, by circumstances, to deny that it is a corporation, as against the plaintiff, have no application to a case like the present, in which the plaintiff sues in a name in which it cannot maintain an action, if not a corporation.

At common law, a number of individuals, voluntarily adopting a name for business purposes, could not sue or be sued in such name. The right to sue in such adopted name can exist only by legislative grant, and the name mentioned in the act of incorporation, or one legally substituted for it, is the only name in which the corporation can sue. No case has been cited to the contrary, nor do we know of any.

Cook on Stock and Stockholders, etc., section 751, says: "It is stated by Blackstone that one of the distinguishing features of a corporation is that it may sue and be sued in its corporate name. This is an elementary principle of law. * * * Moreover, a suit by or against the corporation must be by or against it in its corporate name, and not in the name of the officers." In the present case, the railroad companies who would be entitled to any money, the proceeds of any judgment which might be recovered against appellant, have sued in a name adopted for mere convenience of transportation, the name of a certain line made up of their separate roads.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*