Antoinette Bayci, Appellee, v. Frank Rango, Appellant.

Gen. No. 40,866.

204

Heard in the second division of this court for the first district at the October term, 1939. ▮▮ Opinion filed February 23, 1940. Rehearing denied April 2, 1940.

STANTON & STANTON, of Chicago, for appellant; BAILEY STANTON, S. J. STANTON and WM. McK. GLEESON, all of Chicago, of counsel.

No appearance for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Frank Rango, sued as Secretary-Treasurer of Local 548, of Chicago, Illinois, of the Journeymen Barbers' International Union of America, and also as Sixth Vice-President of the Journeymen Barbers' International Union of America, appeals, "as Sixth Vice-President of the Journeymen Barbers International Union of America, and as Secretary-Treasurer of Local 548, of Chicago, Illinois, of the Journeymen Barbers International Union of America," from a decree ordering that he, "as Secretary-Treasurer of Local 548 of Chicago, Illinois, of the Journeymen Barbers International Union of America, and as 6th Vice-President of the Journeymen Barbers Interna-

tional Union of America, and as the local representative of said International Union and of its Benefit Fund, and in conformity with Article V, Section 4 of the By-Laws of said International Union, shall forthwith pay to the plaintiff herein, Antoinette Bayci, as the legal beneficiary of John A. Bayci, deceased, the sum of $200.00 from the Benefit Fund of said International Union.'' The cause was submitted to the trial court.

Plaintiff failed to file a brief in this court. Her attorney informs us that plaintiff was unable to pay the cost of an appearance and a brief, but that he would file a typewritten brief in support of the decree of the lower court if leave were granted him to do so. After an examination of the record and defendant's brief we find that we can determine this appeal without the aid of a brief from plaintiff. The defense interposed is so lacking in fairness to the deceased member and his widow that it shocks one's sense of justice.

John A. Bayci, husband of plaintiff, died on May 24, 1937. He was a barber, and had been for a number of years a member of the Journeymen Barbers' International Union of America. The membership of that union covers the United States and Canada. It has local unions in many places. The local union in Chicago is known as Journeymen Barbers' International Union of America, Local 548. The deceased joined the International Union in 1929 by becoming a member of a local union at Joliet, Illinois. When he removed to Chicago, in 1933, he became a member of Local 548. If he was a member in good standing at the time of his death the International Union was obligated to pay his widow, plaintiff, the sum of $200 from the Benefit Fund of said Union.

The main contention raised by appellant is: Rango denies that ''as Sixth Vice-President of said International Union, or as member of the General Executive Board, or as Secretary-Treasurer of Local Union

No. 548, he is in a position to pay plaintiff's claim, or any part thereof, from the Benefit Fund or from other moneys being the property of said Union, but . . . states that said Benefit Fund and moneys are deposited, at interest, to the credit of the General Executive Board, as Custodian or Trustee for said Union, in Indianapolis, Indiana; that the members of said Board, being thirteen in number, are, with the exception of this defendant domiciled without the State of Illinois, and are, accordingly, as are the moneys belonging to said Union, beyond the jurisdiction of this Court; that the moneys so on deposit as aforesaid, are subject to withdrawal only upon the written consent of the majority of said Board, and then only when countersigned by the General Secretary-Treasurer''; that while the members of Local 548 pay their death benefit dues to Rango as secretary and treasurer of said Local, he transfers said dues to the General Executive Board in Indianapolis, Indiana, and only said Board can pay death benefits; ''that the plaintiff's action, if any, was one at law . . . and not in equity''; that ''the benefit fund for the payment of death benefits of members in the union in question is a fund accumulated and under sole control of the General Executive Board of the International, which Board, comprised of 13 of its officers, as a body acts as trustee of the benefit fund''; that plaintiff, to obtain redress, must sue said Board and obtain service against all of the members of the said Board, *''who are only thirteen in number''*; that the trial court had no equitable jurisdiction of the subject matter of plaintiff's claim and should have dismissed the suit. The same contention was raised in the trial court.

The record shows that the members of the General Executive Board of the International are James C. Shanessy, Indianapolis, Ind.; W. C. Birthright, Indianapolis, Ind.; Nick Delmont, St. Paul, Minn.; Emil Posner, Detroit, Mich.; C. E. Herrett, Vancouver, B. C., Can.; Patrick H. Reagan, Rochester, N. Y.; Anthony

Merlino, New Haven, Conn.; Frank Rango (defendant in the instant case), Chicago, Ill.; John S. Lloyd, Norfolk, Va.; Frank W. Weibel, Pittsburgh, Pa.; C. T. Crane, Portland, Ore.; Geo. E. McKenna, Springfield, Ohio, and John B. Robinson, Dallas, Texas. Although Rango is Secretary-Treasurer of Local 548, a Vice-President of the International Union, and a member of the General Executive Board, he strenuously insists that service upon him is not enough, but that service must be had upon all of the members of the Board, and in an action at law. He admits that as secretary-treasurer of Local 548, he received the death benefit dues from the deceased and transferred them to the General Executive Board. The trial court called the attention of defendant's counsel to the fact that it would be practically impossible for plaintiff to sue at law and obtain service upon the members of the General Executive Board; nevertheless, the counsel adhered to the position taken in the contention, and he still seeks to maintain it in this court. If the International Union had a meritorious defense to plaintiff's claim it could maintain it as well in equity as in law. If it had no meritorious defense, why seek to defeat a claim like the instant one upon the grounds urged? It is surprising that officials of a fraternal union, to defeat a small death benefit claim, would interpose such a brazen and inequitable defense. The members of the union, if they knew the nature of the defense interposed, would certainly condemn the position taken by appellant.

From the nature of the defense and the arguments advanced in support of it, we are constrained to believe that the instant defense was not made primarily to defeat plaintiff's claim, but to obtain a ruling that would make it practically impossible for a member, or members, of the union to reach the fund in the hands of the General Executive Board of the International Union.

There is, of course, no merit in appellant's position. In *Warfield-Howell Co. v. Williamson*, 233 Ill. 487, the court states the general rule that all persons interested in the subject matter in controversy should be made parties, but adds that there are certain exceptions to that rule; that (p. 496) "where the parties are numerous and it is impracticable to bring them all before the court, service upon a part, to act for the other members of the association as well as for themselves, will be a sufficient service upon the whole. (*Guilfoil v. Arthur*, 158 Ill. 600; *Fitzpatrick v. Rutter*, 160 id. 282; Story's Eq. Pl. sec. 111.) There are many cases to be found where suits in equity have been sustained against voluntary unincorporated associations where service was had upon some agent, committee, manager or trustee, who in some sense might be said to represent the body of the membership." In the well-known case of *Fitzpatrick v. Rutter*, 160 Ill. 282, 286, the court says: "However, if it be conceded that it is but a voluntary association, it is not necessary, as is urged by counsel for appellant, that all the members of the association be made parties and each be served with summons. In general, all persons interested in the subject matter in controversy should be made parties. But there are exceptions to this rule. The members of the Switchmen's Mutual Aid Association of North America are scattered over almost every State of the Union and in Canada, and service in the manner contended for would be impossible, and to require it would be to deprive the complainant of all remedy. Where the parties are numerous and it is impracticable to bring all before the court, as in this case, service upon a part, who act for other members of the association as well as themselves, will be a sufficient service upon the whole. (*Guilfoil v. Arthur*, 158 Ill. 600.)" *American Percheron Horse Breeders' Ass'n v. American Percheron Horse Breeders' & Importers' Ass'n*, 114 Ill. App. 136, involved a bill in equity where the asso-

ciation was a voluntary association, and the court adhered to the rule stated in *Fitzpatrick v. Rutter, supra.* *Guilfoil v. Arthur,* 158 Ill. 600, also involved a bill in equity, brought by the grand officers of the Grand International Brotherhood of Locomotive Engineers. There the court said (p. 605): "It is a general rule, and one well understood, that all persons interested in the subject matter of the litigation should be made parties complainant or defendant. But there are exceptions to this general rule. In section 97 of Story's Equity Pleading, in speaking on this subject, the author says: 'The most usual cases assigning themselves under this head of exceptions are, (1) where the question is one of a common or general interest, and one or more may sue or defend for the benefit of the whole; (2) where the parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole; (3) where the parties are very numerous, . . . and it is impracticable to bring them all before the court.' " In *Fish v. Kanawha Dispatch,* 118 Ill. App. 284, 289, the same rule is followed, the court holding that even if the defendant be considered a voluntary association, its members were scattered over almost every State of the Union and Canada, and service on all would be practically impossible. See, also, *Dugan v. International Ass'n of Bridge & Structural Iron Workers,* 202 Ill. App. 308.

Counsel for appellant stated, in the trial court, that if this court sustained the decree of the trial court it "would require payment by defendant [Rango] from his personal funds." The same statement is made in this court. This plaintive plea must be taken *cum grano salis.* Two or three times the amount awarded this widow must have been expended by someone in the unjustified defense of this suit, and if it is true that the International Union would permit Rango to pay the $200 awarded out of his own pocket, it is time for

the members of the Union, and the proper authorities, to inquire into the benefit fund controlled by the General Executive Board.

In an attempt to give a pretense of merit to the defense, the claim was feebly made that the deceased was not a member in good standing at the time of his death. The deceased, under the Constitution of the International Union, should have paid to Rango, Secretary-Treasurer of Local 548, his death benefit dues of 80 cents for the month of May, 1937, on the first day of that month. He died "suddenly" on May 24, and the dues for that month had not been paid. Under the particular facts of this case there is not the slightest merit in the instant contention. The record showing the payments by the deceased of death benefit dues to Local 548 from June, 1935, to April 27, 1937, is before us, and it shows that during that entire period the deceased never paid his monthly death benefit dues on the first day of the month. To instance: The dues for January and February, 1937, were paid on March 1, 1937; and the dues for March and April, 1937, were paid on April 27, 1937. At no time during the period covered by that record does it appear that the deceased was suspended or that dues were refused by the Local or International union; and during the period in question and up to the time of his death he was treated, apparently, as a member in good standing of Local 548. From the admissions of Rango it appears that all dues paid by the deceased were forwarded to the General Executive Board of the International, and there is no claim made that the International ever refused the dues or took any steps to bring about the termination of the membership of the deceased. Under numerous decisions of this State the provision of the Constitution of the International Union requiring the members to pay the death benefit dues on the first of the month was, under the facts, waived. To refer to a few cases: *Dugan v. International Ass'n of Bridge*

*& Structural Workers,* 202 Ill. App. 308; *Railway Passenger & Freight Conductors' Mutual Aid & Benefit Ass'n v. Tucker,* 157 Ill. 194; *Dromgold v. Royal Neighbors,* 261 Ill. 60; *Olszewski v. Fitchie,* 287 Ill. App. 452. The *Olszewski case,* under the facts, is very similar to the instant one. To quote from the opinion (pp. 456, 457) : ''Notwithstanding the claimed defaults in this case, the member in his lifetime was charged with the monthly dues as they accrued, and the defendants accepted them with full knowledge that a short time had elapsed before receipt of the current month's dues, which were paid quarterly. With this knowledge they continued to recognize the membership of Olszewski, and no notice was ever given him that his right to the sick and death benefit was forfeited. Again, both parties to this litigation have cited the case of *Dromgold v. Royal Neighbors,* 261 Ill. 60. The court in that case said: 'No absolute rule can be laid down as to what acts will in all cases amount to a waiver of a forfeiture of membership in a mutual benefit society, but this court held in *Railway Conductors' Benefit Ass'n v. Tucker,* 157 Ill. 194, that ''conduct on the part of the society which amounts to a recognition of a member's claim to the continuing rights of membership will relieve him from the consequences of his default. The receipt of assessments after default in payment is a common form of waiver.'' ' And so it would seem from the authorities cited by the parties that the continued recognition of the membership of Olszewski amounted to a waiver.'' See, also, *Metropolitan Safety Fund Acc. Ass'n v. Windover,* 137 Ill. 417, 432, 433; *Loyal Americans v. Mayer,* 137 Ill. App. 574, 581; *Falkinberg v. Modern Am. Fraternal Order,* 149 Ill. App. 622, 625.

There is no justification for this appeal. The trial court recognized the unconscionable nature of the defense interposed, and expressly reserved in the decree jurisdiction ''for the purpose of making all such other

and further orders for the enforcement of this decree, . . . as may be proper under the law.'' If the amount awarded in the decree is not paid promptly the trial court should take all proper steps to enforce the payment. The attorney who acted for plaintiff in the trial court, as an officer of the court, should hereafter act to protect the rights of plaintiff. The fact that she is unable to pay for the services of an attorney should not jeopardize her rights. The amount involved in this suit is small, but a decision upholding appellant's main contention would make it practically impossible to enforce any death benefit claims that may hereafter arise.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.