Joseph Riddle, Administrator of Estate of Joseph Graber, Deceased, Appellee, v. General Union of International Brotherhood of Blacksmiths, Drop Forgers and Helpers, Appellant.

Opinion filed March 1, 1941.

C. C. Dreman and C. J. Anderson, both of Belleville, for appellant.

T. S. Morgan, of East St. Louis, for appellee.

Mr. Presiding Justice Stone delivered the opinion of the court.

On January 10, 1938, Joseph Riddle was appointed administrator of the estate of Joseph Graber, deceased. Graber at the time of his death on January 5, 1938, was

a member of the Local Union of International Brotherhood of Blacksmiths, Drop Forgers & Helpers. As such administrator, appellee made application to the appellant for the payment to him of the death benefits provided by appellant's constitution for those members who are in good standing at the time of their death and who have been for at least 6 months last past. The application was refused by appellant on the ground that Graber was in arrears in dues for 2 months at the time of his death, and that upon refusal of appellant to pay that the plaintiff had not referred the question to the general executive board of said union for determination before instituting suit. Plaintiff afterwards instituted this suit to collect the sum of $300 on the theory that his intestate had been a member in good standing of said union for more than 5 years, and, therefore, was entitled to said sum of money, that being the amount provided by the constitution for said members in good standing who had been such for 5 years.

The complaint in the case set out article 15 of appellant's constitution, the pertinent parts of which provide that $300 shall be paid to such members who have been in good standing for the period of 5 years and that all questions and disputes arising on account of payment of claims shall be referred to the general executive board, whose decision shall be final.

Trial had been on complaint and answer before the court without a jury and the court rendered judgment in favor of appellee for the sum of $300, from which judgment appellant appealed to this court.

The evidence shows that the deceased had been a member of the union since 1925, appellee produced receipts, and out-of-work receipts showing such membership since February 9, 1928. In 1936, the deceased's dues for March were paid on April 14th of that year; the dues for April and May, 1936 were paid on June 22, 1936; the dues for June and July were paid

on August 20, 1936; the dues for August and September, on October 19, 1936; the dues for October and November, 1936, on December 14, 1936, and so on down to December 20, 1937, 16 days before his death, when deceased paid his dues for the months of October and November, 1937.

Appellant claims that the deceased at the time of his death was not in good standing because the December and January dues had not been paid in advance. The receipts showing payment show clearly and conclusively that appellant adopted a different system of payment from that which it claimed,—that is, in advance; that it accepted the dues of the deceased almost as he wished to pay them,—never in advance, always in arrears, and when he paid 2 months at a time instead of 1 it still left him in arrears. Notwithstanding this the appellant accepted his money and kept him as a member in good standing of its union, and continued to accept the money time and time again under this different system, which apparently met the convenience of the deceased.

We have so often held that this course of conduct waives the payment prescribed in insurance policies and other like obligations that it seems futile to repeat it here. In *Benoist v. Business Men's Assur. Co. of America,* 299 Ill. App. 571, we said:

"These 12 quarterly payments which were paid by the insured and accepted by the defendant appellant would make a period of about 3 years. Running over that length of time, and accepting the payments when they were past due without any apparent objection and without any word to the insured looking towards forfeiture, or any steps in that direction, seems to us by consent and agreement and practice to establish a different system of payment than that provided in the policy. We are, therefore, of the opinion that the defendant waived the payments as provided in the policy and consented to a different system of payment

which would estop it from saying now that the policies were not in continuous force. This conclusion finds support in the case of *Illinois Life Ass'n v. Wells,* 200 Ill. 445, 65 N. E. 1072, 1075, in which it was said 'If payment was actually made, even though not according to the terms of the policy, the company could certainly not thereafter insist upon a forfeiture for a failure to pay promptly.' ''

Practically this same thing was reiterated by us in *Harris v. Sovereign Camp of Woodmen of the World, Inc.,* 302 Ill. App. 310, and *Bayci v. Rango,* 304 Ill. App. 203. In *Harris v. Sovereign Camp of Woodmen of the World,* 374 Ill. 47, our Supreme Court said:

''We approve of the judgment of the Appellate Court on the only question which we have power to review. In *Dromgold v. Royal Neighbors of America,* 261 Ill. 60, we held that a subordinate lodge or council is the agent of the supreme lodge, notwithstanding the declaration of any by-law to the contrary; that where a member is required to pay dues to the local lodge, the local lodge, in that matter, is the agent of the supreme lodge, and is the authority with whom members must deal, and upon whose actions, within the scope of its authority, the members may rely; that if a benefit society permits a subordinate lodge and its officers to act in such a manner in receiving dues that the member is justified in believing that the reasons for forfeiture specified in the by-laws have been waived, the society cannot set up such a forfeiture nor rely thereon as a defense to a suit on the benefit certificate. This case is so close to that one on the facts that we might quote much of the opinion here, but deem it unnecessary.''

These decisions, together with many others that might be cited would seem to have settled once and for all the question of waiver of payment in such cases. The facts in this case show to our mind that if deceased had lived and sent in his payment at the date he died,

instead of dying, the appellant would have willingly received it. It was only when "pay-day" came that it fell back upon its strict adherence to the rule that dues must be paid in advance.

The second defense set up has really less merit, if possible, than the first. All the correspondence between the parties to this suit was sent to the general secretary who was also the secretary of the general board, which the constitution provides should adjust claims. It seems to us that this amounts to submitting it to that board. The evidence further shows the fact that appellee applied to the appellant for a copy of the constitution in order that he might be guided by it, and it was refused to him.

In *Friedman v. Knights of Modern Maccabees,* 170 Ill. App. 33, it was held that in order that a failure by the beneficiary to exhaust the remedies provided to be pursued under the constitution and by-laws of the society may be availed of, the society must show that it did all that was required of it in order to require the beneficiary to resort to such remedies.

After a full consideration of all the issues in this case and the facts thereon, we are inclined to reiterate the language of the First District Appellate Court in *Bayci v. Rango, supra,* namely: "The defense interposed is so lacking in fairness to the deceased member and his widow that it shocks ones sense of justice."

The distinguished and able trial judge who decided this case, in our judgment, decided it correctly. That judgment is affirmed.

*Judgment affirmed.*