Bella Tesk, Appellee, v. C. G. Sagerstrom et al., Appellants.

Gen. No. 42,388.

Opinion filed December 30, 1942.

EUGENE R. WARD and CHARLES B. COLLINS, both of Chicago, for appellants; JAMES B. McKEON, of Chicago, of counsel.

Irving S. Abrams, of Chicago, for appellee.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

This appeal seeks to reverse a decree which directed the secretary-treasurer of defendant union to pay $500 from the funds of said union as a death benefit to plaintiff, Bella Tesk, dependent widow of Jake Tesk, a deceased member of the union.

The complaint alleged in substance that Jake Tesk was a member in good standing of the Ice Men's Union, Local No. 702, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America (hereinafter for convenience referred to as the union) from May 16, 1919 to July 24, 1941 and that he died on the latter date; that by virtue of certain paragraphs of the by-laws of union plaintiff, Bella Tesk, as the dependent widow of said Jake Tesk was entitled to receive $500 as and for a death benefit from the union; that the dues of Jake Tesk for the months of April, May, June and July of 1941 were paid on June 25, 1941; that "said deceased had been in the habit of paying his dues at such irregular times, the payments covering periods of from two to six months" and that the union by its officers "accepted such payments and by its acceptance and conduct has waived the forfeiture provisions contained in said by-laws"; and that plaintiff made demand upon the union and the secretary-treasurer thereof for the $500 death benefit but the defendants have refused to pay same. The defendant union's by-laws pertaining to death benefits were attached to and made a part of the complaint.

Defendants' motion to strike plaintiff's complaint was denied. Defendants then filed an answer, the pertinent and material portions of which are as follows:

"The defendants and each of them admit that the plaintiff is the widow of Jake Tesk but deny that Jake Tesk was at the time of his death, a beneficial member in good standing of the defendant union as defined by the by-laws of said Union and deny that as the widow of Jake Tesk the plaintiff is entitled to a death benefit of $500 and assert the fact to be that according to said by-laws only dependent beneficiaries of beneficial paid up members who for one year previous to their death were in good standing, as defined by said by-laws are entitled to a death benefit of $500.

"The defendants admit that on June 25, 1941, dues of Jake Tesk, for the months of April, May, June and July, 1941, were paid to the Ice Men's Union Local No. 702, and admit at various times said deceased paid dues at irregular times covering periods from three to seven months, but deny that said defendant union, by the acceptance of said payments and by the conduct of its officers, it waived any of the provisions of said by-laws; and further assert the facts to be that from and after May 1, 1939, in every month wherein Jake Tesk failed to pay dues to the defendant union on or before the 10th of each respective month, as per the provisions of the by-laws, he was notified in writing that he had allowed himself to be suspended from any claim to sick, accident or death benefits; that dues must be paid on or before the 10th of each current month in order to obtain benefits, that he was further notified at each of said times to read the by-laws as all payments of sick, accident or death claims are governed thereby; that on many other occasions when he was in default in payment of dues, he was notified verbally to the same effect.

"The defendants further deny that the acceptance of delinquent dues on June 25, 1941 or at any time previous thereto, or the conduct of the officers of said defendant union, after the notice herein referred to,

constituted a waiver of the provisions of said by-laws. That said payments were accepted, only after service on said deceased of the aforesaid notices in writing. That said written notices were specific notices to the deceased that the provisions of the by-laws would not be waived and that said payments were accepted, subject to the provisions of said by-laws.''

Plaintiff's motion to strike defendants' answer was denied and the cause was heard upon plaintiff's complaint, defendants' answer thereto and the following stipulation of facts:

''1. That the plaintiff is the widow of Jake Tesk, deceased.

''2. That Jake Tesk died on the 24th day of July, A. D. 1941.

''3. That for some years previous to his death Jake Tesk was employed by the California Ice & Coal Company as a driver.

''4. That on the 6th day of May, A. D. 1919, Jake Tesk was initiated in the defendant organization and since that time paid dues to said organization in various amounts and at various times up to and including dues for the month of July, A. D. 1941.

''5. That the Icemen's Union Local No. 702 is an unincorporated association of individuals affiliated with the American Federation of Labor.

''6. That its membership is limited to persons working in the ice business and to persons who do not own or operate more than two yearly running wagons.

''7. That said Union was organized for the purpose of protecting the persons constituting its membership in their line of employment, and for the improvement of working conditions, wages and hours of employment of its members.

''8. That during the Year 1941 and the month of July, 1941, the membership of said Union never exceeded 2,000.

''9. That the printed copy of the death benefit by-laws incorporated in the answer filed by the defend-

ants contains the true and correct by-laws of the defendant organization in reference to death benefits in force and effect from and after May 1, 1939, and in force and effect at the time of the death of Jake Tesk.

"10.   That dues as per the terms of the by-laws in force and effect after May 1, 1939, the date of the last revision of the by-laws of said organization, were Three Dollars ($3.00) per month, payable monthly on or before the 10th day of each current month.

"11.   That monthly dues of Jake Tesk for the period from March [May] 1, 1939, up to and including the month of July, 1941, their amount, their due date and the date paid, are as per the following schedule:

| Month | | Amount | Date Due | | | Date Paid | | |
|---|---|---|---|---|---|---|---|---|
| May | 1939 | $3.00 | on or before May | 10, 1939 | | June | 22, 1939 |
| June | 1939 | 3.00 | on or before June | 10, 1939 | | Aug. | 22, 1939 |
| July | 1939 | 3.00 | on or before July | 10, 1939 | | Aug. | 25, 1939 |
| Aug. | 1939 | 3.00 | on or before Aug. | 10, 1939 | | Aug. | 25, 1939 |
| Sept. | 1939 | 3.00 | on or before Sept. | 10, 1939 | | Nov. | 6, 1939 |
| Oct. | 1939 | 3.00 | on or before Oct. | 10, 1939 | | Nov. | 6, 1939 |
| Nov. | 1939 | 3.00 | on or before Nov. | 10, 1939 | | Nov. | 6, 1939 |
| Dec. | 1939 | 3.00 | on or before Dec. | 10, 1939 | | Jan. | 30, 1940 |
| Jan. | 1940 | 3.00 | on or before Jan. | 10, 1940 | | Jan. | 30, 1940 |
| Feb. | 1940 | 3.00 | on or before Feb. | 10, 1940 | | Apr. | 3, 1940 |
| Mar. | 1940 | 3.00 | on or before Mar. | 10, 1940 | | Apr. | 3, 1940 |
| Apr. | 1940 | 3.00 | on or before Apr. | 10, 1940 | | June | 28, 1940 |
| May | 1940 | 3.00 | on or before May | 10, 1940 | | June | 28, 1940 |
| June | 1940 | 3.00 | on or before June | 10, 1940 | | Aug. | 28, 1940 |
| July | 1940 | 3.00 | on or before July | 10, 1940 | | Aug. | 28, 1940 |
| Aug. | 1940 | 3.00 | on or before Aug. | 10, 1940 | | Sept. | 5, 1940 |
| Sept. | 1940 | 3.00 | on or before Sept. | 10, 1940 | | Sept. | 5, 1940 |
| Oct. | 1940 | 3.00 | on or before Oct. | 10, 1940 | | Sept. | 24, 1940 |
| Nov. | 1940 | 3.00 | on or before Nov. | 10, 1940 | | Mar. | 18, 1941 |
| Dec. | 1940 | 3.00 | on or before Dec. | 10, 1940 | | Mar. | 18, 1941 |
| Jan. | 1941 | 3.00 | on or before Jan. | 10, 1941 | | Mar. | 18, 1941 |
| Feb. | 1941 | 3.00 | on or before Feb. | 10, 1941 | | Mar. | 18, 1941 |
| Mar. | 1941 | 3.00 | on or before Mar. | 10, 1941 | | Mar. | 18, 1941 |
| Apr. | 1941 | 3.00 | on or before Apr. | 10, 1941 | | June | 25, 1941 |
| May | 1941 | 3.00 | on or before May | 10, 1941 | | June | 25, 1941 |
| June | 1941 | 3.00 | on or before June | 10, 1941 | | June | 25, 1941 |
| July | 1941 | 3.00 | on or before July | 10, 1941 | | June | 25, 1941 |

"12. That on each occasion since May 1, 1939, that Jake Tesk failed to pay his dues to said defendant organization on or before the 10th day of each current month, as provided by the by-laws of said organization, a notice substantially in form as follows [was mailed to him]:

"ICE MEN'S UNION, LOCAL No. 702.

June 19, 1939
Official Notification
Book No. 1874

Mr. Jake Tesk
Dear Sir and Brother:–

I beg to call your attention to the fact that you are in arrears for dues to Local No. 702 for the sum of $6.00 including this month.

Your present standing indicates that You Have Allowed Yourself to Become Suspended from any claim to Sick, Accident or Death Benefits.

Dues must be paid on or before the 10th day of each current month in order to obtain benefits.

-Pay Up Now-
Keep Paid Up in the Future

Read the By-Laws, as All Payments of Sick,
Accident or Death Benefit
Claims Are Governed Thereby.

C. G. SAGERSTROM,
*Secretary-Treasurer.*"

The pertinent portions of the by-laws of the defendant union pertaining to death benefits are as follows:

"1. Death benefits, as hereinafter outlined, will be paid to dependent beneficiaries of deceased members under the following provisions and qualifications, which are established, not as an insurance company, but as a contribution from a voluntary association, not organized for profit.

"2. Dues shall be $3.00 per month, payable monthly, on or before the 10th day of each current month.

"3. In accordance with Section 2 of this Article, a member in good standing entitled to death benefits, is one who has paid each current month's dues on or before the 10th day of each current month for a continuous period as specified in Section 4.

"4. To dependent beneficiaries of good standing beneficial members who die under the above provisions and qualifications, the Union will pay as follows:

"(1)  No member shall be entitled to death benefits until he has been a member for six (6) months after Initiation, acceptance of Transfer Card, Withdrawal Card or by Reinstatement through payment of back dues.

"(2)  To beneficial paid-up members who have been continuously in good standing for from six (6) months to one (1) year prior to death, a death benefit of $250.00 will be paid.

"(3)  To beneficial paid-up members who have been continuously in good standing for one (1) year previous to death, a death benefit of $500.00 will be paid.

" .  .  .

"7. No death benefit shall be paid if member dies while a nonbeneficial member. A nonbeneficial member, who is not in good standing at time of death, cannot have delinquent dues paid for him so as to entitle beneficiary to death benefits. The payment and acceptance of delinquent dues from a nonbeneficial member shall not operate as a waiver of any of the provisions of these By-Laws, but shall be a warranty that he is in good health at the time of such payment.

" .  .  .

"9. No death benefits can be claimed on due books which are classed as nonbeneficial and are so recorded upon the ledger and due book."

The material findings of the decree are as follows:

"That the plaintiff, Bella Tesk, as widow of Jake Tesk, said deceased member of said Local Union #702, was and now is entitled to the sum of $500.00 as and for death benefits accruing and payable to her in accordance with the provisions of the By-Laws of the Ice Men's Union, Local #702.

"That the continued acceptance of dues by the said Ice Men's Union, Local #702 from the said Jake Tesk at irregular and intermittent intervals of his lifetime, constituted a waiver of said Ice Men's Union, Local #702 of the strict provisions of the By-Laws requiring the payment of dues by members on or before the 10th day of each month as they accrued and denying sick or death benefit to any member unless his dues shall be paid on or before the 10th day of each month as they accrued."

The real question presented for determination is whether the conduct of the defendant union and its officers, under the facts and circumstances as shown by the evidence, constituted a waiver of the provisions of the by-laws which defendants assert bar plaintiff from recovery.

It is conceded at the outset that the by-laws of the defendant union were a part of the contract between it and Tesk and it is agreed that Tesk did not comply strictly with the terms of said by-laws in respect to the payment of his dues. Therefore, unless the facts and circumstances in evidence show that the defendant union waived compliance by Tesk with the provisions of its by-laws pertaining to the payment of monthly dues, plaintiff is barred under such provisions from recovery of the $500 death benefit.

Jake Tesk was a member of the union for 22 years and his dues had been paid in full from the time he joined the union May 6, 1919 until he died July 24, 1941. However, as shown by the schedule heretofore set forth, his dues were paid irregularly and not "on

or before'' the 10th day of each month for practically all of the months from May, 1939 to July, 1941.

Defendants insist that plaintiff is not entitled to recover since Tesk was not a beneficial member of the union in good standing at the time of his death because he had not ''paid each current months dues on or before the 10th day of each month for a continuous period'' of at least one year prior to his death and because he had not been ''continuously in good standing for . . . one . . . year previous to his death'' as provided in the by-laws. There is a further provision in the by-laws that ''no death benefit shall be paid if member dies while a non-beneficial member.'' Plaintiff asserts that defendant union waived compliance with these provisions of the by-laws by reason of its acceptance of Tesk's dues as and when they were paid and by reason of its practice in so doing.

Defendants admit in their brief that ''on many occasions courts have held that the receipt of assessments after default in payment is a common form of waiver,'' but contend that whether such acceptance constitutes a waiver depends altogether on the facts and circumstances of each individual case.

It has been repeatedly held that neither an insurance company nor a mutual or fraternal benefit association will be permitted to treat an insurance policy or a benefit certificate as alive and in full force and accept premiums or assessments from the insured over a period of years in violation of suspension and forfeiture provisions of the contract of insurance until death occurs, and then for the first time seek to avoid the insurance policy or benefit certificate and escape its liability. It is also the established rule that insurance companies and mutual benefit associations will not be permitted to escape liability by reason of conditions in their insurance policies or benefit certificates which provide for forfeiture for nonpayment of premiums or assessments when due, where their course of dealing

with their members has led them to believe that the provisions for forfeiture would not be relied upon.

In *Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Tucker,* 157 Ill. 194, the court said, at p. 200:

"Where the practice of the company, and its course of dealing with the insured, and others known to the insured, has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief."

(To the same effect are *Harris v. Sovereign Camp, Woodmen of the World,* 374 Ill. 47; *Dromgold v. Royal Neighbors of America,* 261 Ill. 60; *Metropolitan Safety Fund Accident Ass'n v. Windover,* 137 Ill. 417; *Routa v. Royal League,* 274 Ill. App. 152; and *Tecumseh Mut. Life Ass'n v. Woodman,* 99 Ill. App. 546.)

It has frequently been held that the foregoing principles of law applicable to insurance companies and mutual and fraternal benefit associations are equally applicable to labor unions under whose constitutions or by-laws death benefits are payable. In *Riddle v. General Union of International Brotherhood of Blacksmiths, Drop Forgers & Helpers,* 309 Ill. App. 163, the constitution of the defendant union provided for the payment of death benefits for those members who were in good standing at the time of their death and for at least six months prior thereto. The constitution also provided that the dues of the members were payable in advance prior to the first day of each month but it appeared that the dues of the deceased member therein had been accepted by the union although never paid in advance. In affirming the judgment in that case in favor of the beneficiary the court said at pp. 165 and 166:

"Appellant claims that the deceased at the time of his death was not in good standing because the December and January dues had not been paid in advance. The receipts showing payment show clearly and conclusively that appellant adopted a different system of payment from that which it claimed,—that is, in advance; that it accepted the dues of the deceased almost as he wished to pay them,—never in advance, always in arrears, and when he paid 2 months at a time instead of 1 it still left him in arrears. Notwithstanding this the appellant accepted his money and kept him as a member in good standing of its union, and continued to accept the money time and time again under this different system, which apparently met the convenience of the deceased.

"We have so often held that this course of conduct waives the payment prescribed in insurance policies and other like obligations that it seems futile to repeat it here. In *Benoist v. Business Men's Assur. Co. of America,* 299 Ill. App. 571, we said:

" 'These 12 quarterly payments which were paid by the insured and accepted by the defendant appellant would make a period of about 3 years. Running over that length of time, and accepting the payments when they were past due without any apparent objection and without any word to the insured looking towards forfeiture, or any steps in that direction, seems to us by consent and agreement and practice to establish a different system of payment than that provided in the policy. We are, therefore, of the opinion that the defendant waived the payments as provided in the policy and consented to a different system of payment which would estop it from saying now that the policies were not in continuous force. This conclusion finds support in the case of *Illinois Life Ass'n v. Wells,* 200 Ill. 445, 65 N. E. 1072, 1075, in which it was said "If payment was actually made, even though not according to the terms of the policy, the company could certainly not

thereafter insist upon a forfeiture for a failure to pay promptly.' ''

''Practically this same thing was reiterated by us in *Harris v. Sovereign Camp of Woodmen of the World, Inc.,* 302 Ill. App. 310, and *Bayci v. Rango,* 304 Ill. App. 203. In *Harris v. Sovereign Camp of Woodmen of the World,* 374 Ill. 47, our Supreme Court said:

'' 'We approve of the judgment of the Appellate Court on the only question which we have power to review. In *Dromgold v. Royal Neighbors of America,* 261 Ill. 60, we held that a subordinate lodge or council is the agent of the supreme lodge, notwithstanding the declaration of any by-law to the contrary; that where a member is required to pay dues to the local lodge, the local lodge, in that matter, is the agent of the supreme lodge, and is the authority with whom members must deal, and upon whose actions, within the scope of its authority, the members may rely; that if a benefit society permits a subordinate lodge and its officers to act in such a manner in receiving dues that the member is justified in believing that the reasons for forfeiture specified in the by-laws have been waived, the society cannot set up such a forfeiture nor rely thereon as a defense to a suit on the benefit certificate. This case is so close to that one on the facts that we might quote much of the opinion here, but deem it unnecessary.'

''These decisions, together with many others that might be cited would seem to have settled once and for all the question of waiver of payment in such cases.''

(*Bayci v. Rango,* 304 Ill. App. 203 and *Olszewski v. Fitchie,* 287 Ill. App. 452, are cases which involve labor unions and they are to the same effect.)

It will be noted that the facts in the *Riddle* case are very similar to the facts here and we think that case is squarely in point as to the situation presented in the instant case.

Defendant union argues that the rules enunciated in the foregoing cases are not applicable to this case because of the character of its organization, the nature of its by-laws and its course of dealing with Tesk. It is claimed that because its by-laws specifically state that ''death benefits . . . will be paid . . . not as an insurance company, but as a contribution from a voluntary association,'' the defendant union is not governed by said rules. In other words that death benefits payable by it are in the nature of a reward for the prompt payment of dues. In every case cited it was the intention and purpose of the organization involved to encourage and persuade its members to pay their dues promptly. In our opinion no matter how the ''death benefits'' are characterized they are in the nature of insurance and are considered as such by the ordinary member of a labor union. As has been seen the rules under consideration are applicable alike to labor unions, mutual benefit associations and insurance companies.

While there is no provision in the by-laws pertaining to death benefits for the suspension or expulsion of a member for failure to pay his dues promptly, there is a provision which indicates that a delinquent member may be reinstated merely ''through payment of back dues.'' There is no question but that Tesk was reinstated as a member of the union and that he was in good standing at the time of his death. But the defendant union urges that it required more than membership in the union and payment of dues to entitle a dependent beneficiary of a member to the payment of a death benefit. It asserts that in addition it must be shown that Tesk paid his dues in accordance with the by-laws on or before the 10th day of each month continuously for one year ·or more to entitle his beneficiary to the payment of the death benefit claimed in this case. While the provisions of the by-laws heretofore set forth, which relate to the payment of dues and

which classify the members as beneficial or nonbeneficial, are not strictly speaking provisions for forfeiture, they are such in effect and it is conceded that they may be waived in a proper case. Considered in their entirety said by-laws are directed to the same end as are the forfeiture provisions of insurance policies and mutual benefit certificates. They are intended to deprive the beneficiaries of members of the union of death benefits because of the failure of such members to pay their dues promptly. That such provisions for prompt payment, regardless of how stringent they may be, may be waived by the union by its consenting to a different system of payment is unquestionably the law of this State.

Defendants stress the importance of the notice sent to Tesk on each occasion when he did not pay his dues on or before the 10th day of the month as indicating ''an intention on the part of the association to enforce the by-laws and to accept past dues subject to all the conditions and limitations therein contained.'' These notices stated that Tesk was in arrears; that ''your present standing indicates that You Have Allowed Yourself to Become Suspended from any claim to Sick, Accident or Death Benefits''; ''Keep Paid Up in the Future''; ''Read the By-Laws, as All Payments of Sick, Accident or Death Benefit Claims Are Governed Thereby.'' Fairly construed, the most that can be said of the foregoing statements contained in the notices is that they were intended as reminders of the by-laws relating to the payment of dues. In spite of such reminders Tesk's dues were accepted as and when he paid them. There is no evidence in the record that he was ever told when he paid delinquent dues and same were accepted by the union that he was a non-beneficial rather than a beneficial member. As was said in *Benoist v. Business Men's Assur. Co. of America, supra,* ''accepting the payments when they were past due without any apparent objection and without any

word to the insured looking towards forfeiture, or any steps in that direction, seems to us by consent and agreement and practice to establish a different system of payment than that provided in the policy.'' It will be noted that these notices also included the admonition ''Pay Up Now.'' This admonition which almost immediately followed the statement in the notices that Tesk had allowed himself ''to become suspended'' from any claim to ''Death Benefits'' because he was in arrears in his dues may well have caused him to believe that if he paid his back dues the provisions of the by-laws as to the prompt payment of dues would be waived. In any event his back dues were accepted over a period of more than two years prior to his death and the method of payment provided in the by-laws was thereby waived.

The defendant union claims and one of its by-laws provides that if a member became delinquent by reason of his failure to pay even one month's dues on or before the 10th day of that month his status immediately became that of a non-beneficial member and that such status continued until the delinquent dues were paid and dues were thereafter paid on or before the 10th day of each month for at least six months or as in the instant case for at least one year and that only by complying with such provision could a member be restored to the status of beneficial membership. The dues were the same, three dollars a month, whether the membership was beneficial or non-beneficial. According to defendants the rights of a non-beneficial member consisted of protection in his employment and improved working conditions, increased wages and decreased hours of employment, enjoyed by him as the result of his membership in the union, and the beneficial member enjoyed these same rights and in addition thereto the right to have his beneficiary receive a death benefit. It would serve no useful purpose to discuss at length defendants' contention in regard to the by-law just

above referred to, since we have already held that its provisions could be and were waived. In passing upon a similar contention in *Olszewski v. Fitchie,* 287 Ill. App. 452, the court said at p. 457:

"From the by-laws as we have them before us it is impossible to separate the rights of a member of the union from the benefits to be derived by reason of the sick and death benefit. It may be true that membership in the union carries with it the right to take advantage of the collective bargaining forces of the union relating to wage scales and conditions of employment, still when a member joined there was held out to him that by the terms of the by-laws, certain sick and death benefits were payable as such upon the conditions provided therein."

Neither of the parties discuss or even mention in their briefs section 9 of the by-laws pertaining to death benefits, which section we think is highly significant. It provides:

"No death benefits can be claimed on due books which are classed as non-beneficial and are so recorded upon the ledger and due book."

It is apparent that the defendant union failed to comply with this by-law. If it had so complied its secretary-treasurer would have indicated in writing in Tesk's due book that he was classified as a non-beneficial member because of his failure to pay his dues promptly and the secretary-treasurer would also have made a record in the ledger of the union that Tesk was classified as a non-beneficial member. In so far as the record discloses Tesk was not classified as a non-beneficial member either in his due book or in the union's ledger and it is fair to assume that if he was so classified in said due book or ledger such books would have been presented in evidence by the union. In the absence of such a showing it is also fair to assume that Tesk was considered by the union a beneficial member until the time of his death. The union's

failure to observe this by-law is another factor, which considered with the union's acceptance of Tesk's dues in the manner heretofore indicated and contrary to the method of payment prescribed in its by-laws, shows conclusively that as to Tesk the union waived the provisions of its by-laws pertaining to the payment of his monthly dues on or before the 10th day of each month. The union could not recognize Tesk as a beneficial member until he died and then set up as a defense to his beneficiary's claim for his death benefit that he was a non-beneficial member. As was said in *Riddle v. Brotherhood of Blacksmiths, supra*: "The facts in this case show to our mind that if deceased had lived and sent in his payment at the date he died, instead of dying, the appellant would have willingly received it. It was only when 'pay-day' came that it fell back upon its strict adherence to the rule that dues must be paid in advance." Regardless of how clear and explicit the provisions of the by-laws of the defendant union are as to the manner in which a member's dues must be paid in order to retain or re-establish such member's status as a beneficial member, the law is firmly established that said provisions may be waived by the conduct of the union and its officers. We are impelled to hold that by its conduct the defendant union waived the strict provisions of its by-laws as to the manner in which Tesk's dues were payable and that his dues having been paid in full at the time of his death plaintiff beneficiary is entitled to recover his death benefit.

For the reasons stated herein the decree of the circuit court of Cook county is affirmed.

*Affirmed.*

FRIEND and SCANLAN, JJ., concur.