James R. EADS, Lawrence S. Shapiro et al., on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

Clarence N. SAYEN and Don J. Smith, Defendants-Appellees.

No. 12916.

United States Court of Appeals Seventh Circuit.

Aug. 12, 1960.

Robert Ackerberg, Jr., James B. O'Shaughnessy, Chicago, Ill., Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., of counsel, for appellants.

Newton N. Minow, F. Harold Bennett, W. Willard Wirtz, for appellee.

John W. Hunt, Chicago, Ill., Stevenson, Rifkind & Wirtz, Chicago Ill., of counsel, for defendants-appellees.

Before SCHNACKENBERG, MAJOR and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

The original plaintiffs here were James R. Eads and Lawrence S. Shapiro, members of the Air Line Pilots Association, International. By supplemental complaint, seventeen other members of the Association joined them. The defendants are Clarence N. Sayen and Don J. Smith, respectively President and Treasurer of the Association. The Association, which is not a party, is a voluntary, unincorporated association of pilots employed by air common carriers in the United States, and is the duly designated collective bargaining representative of pilot members for some fifty carriers, but there is no closed or union shop, and pilots need not belong to the Association to maintain their jobs.

Plaintiffs brought this action in the District Court to obtain equitable relief from allegedly invalid levies of two assessments to pay benefits to Capital and Eastern Airlines pilot members, who were out of work because of strikes by other unions, though not themselves on strike. Plaintiffs also sought protection from disciplinary action against them by the Association. The matter was referred to a special master who found and concluded that the suit was between citizens of different states; that more than $10,000, exclusive of interest and costs, was involved, in that assessments of more than $1,000,000 would have to be refunded or cancelled if plaintiffs were successful; and that this was a class action—all pilots who paid the assessments would in equity be entitled to refund, and those who had not paid would be entitled to cancellation, if plaintiffs, who fairly insured adequate representation of all members of the class, were successful.

Defendants argue that the special master erred in concluding that plaintiffs adequately represented the class, but defendants took no appeal.

The special master also found and concluded that the assessments were valid, the voting procedures in accordance with the Association's Constitution and By-laws, Robert's Rules of Order, and the interpretation placed on the Constitution and By-laws by the Association's board of directors, who, under the Constitution and By-laws, are given the power to interpret the same in the event of any dispute arising out of their meaning or intent.

Thus, the special master concluded that in authorizing the two assessments of which plaintiffs complain, the board of directors interpreted the Constitution and By-laws to mean that payment of benefits to pilots out of work on account of strike but not themselves on strike, was an emergency expense for an object within the scope of article I, section 6 of the Constitution and By-laws.*

---

* "Objects
"Sec. 6 * * *.

"(j) To levy initiation fees, dues and assessments upon its members to provide the funds with which to carry on the

The special master also found that adequate and reasonable remedies were provided by the Constitution and By-laws within the procedures of the Association, and that plaintiffs had not availed themselves of those remedies, or of their adequate remedy at law, and that, further, the Association itself was an indispensable party-defendant.

The District Judge adopted the special master's findings and conclusions, after considering the objections thereto. The complaint was dismissed.

Plaintiffs appealed from the final judgment except for that part of it which adopted the findings and recommendations of the special master concerning jurisdiction of the subject matter and parties, jurisdictional amount, class action and adequate representation of all class members by plaintiffs. Plaintiffs contend that they are forbidden, by the Association's Constitution, to challenge any assessments approved by the board of directors and that the entire subject of internal remedies within the Association is foreclosed; that the numerous remedies found available by the special master and the District Court are impracticable or illusory.

Plaintiffs also argue that the Association as an unincorporated association lacks the capacity to be sued under Illinois law and cannot, therefore, be joined as a party.

It is plaintiffs' position that the defendant officers are acting without valid authority because assessments must be approved, in mail balloting, by an absolute majority of all 290 directors and not merely by a majority of those voting; and that, in meetings, assessments must be approved by roll call and not a mere voice vote. With respect to the assessment for Eastern pilot members, plaintiffs allege that the directors were prevented from any valid exercise of their authority by combination of four questions in a single voting proposition, and by failure to disclose to the directors the existence of a partial agreement made between the Association and Eastern Airlines. Plaintiffs further contend that the assessments were not levied for purposes authorized by the Association's Constitution, and that the purposes stated therein may not be enlarged other than by deliberate amendment.

Plaintiffs' prayer for relief calls for the accounts of members who paid the assessment to be credited with such sums against future dues and assessments. Plaintiffs argue that this method of redress would preserve the operating integrity of the Association. Thus over a period of time (plaintiffs suggest five years) these members would be reimbursed at the gradual expense of Capital and Eastern members, who, in the eyes of plaintiffs, having been unjustly enriched, would make restitution indirectly. The Capital and Eastern members would also receive credits for the payments each made for the other. Plaintiffs feel that the differential, between dues and assessment payments made by a member of their class and such payments made by any other member, would prove to be less than $20 per year per such member.

However, the District Court in adopting the special master's findings held that neither defendant is a policy-making official, and that in carrying out their duties as President and Treasurer, they are subject to the control and direction of the board of directors and the executive committee of the Association; that the Constitution and By-laws give them no authority to waive payment of assessments, to make payments out of the Association treasury, adjust the books and records or credit members' accounts for moneys not actually paid in, except on authorization of the board of directors; and that a decree directing them

---

business and objects of the Association, including the payment of all expenses, emergency or otherwise relating thereto, and to establish an ample reserve fund for the current and future protection of its members." (Exhibit C to Amendment and Supplement to Complaint, Defendants' Appendix, p. 1)

to do any of these things would be invalid because the Association, an indispensable party, had not been joined as a party defendant.

■ In their answer filed May 11, 1959, defendants asserted, as their Fourth Defense, the fact that the Association was not a party. The District Court allowed the motions of plaintiffs dated May 19, 1959, and June 2, 1959, to file amendments to their complaint, but no apparent attempt was made to add the Association as a party.

Plaintiffs' position is that Rule 17(b), Federal Rules of Civil Procedure, 28 U.S.C.A. requires application of local state law to determine capacity to be sued, and that, in Illinois, a union cannot be sued as an entity. The defendants agree with this general statement of the law, but argue that this does not mean that the Association can never be sued, because under Federal Rule 23, the members of an unincorporated association may be sued as a class.

Plaintiffs rely on Talton v. Behncke, 7 Cir., 1952, 199 F.2d 471, for their assertion that:

"The conclusion that ALPA [the Association] had to be a party had no merit in 1952, and it has none now." (Plaintiff's brief, p. 39)

In Talton a class suit was brought by members of this same Association individually and as members of the Executive Board and of the Board of Directors of the Association to restrain a recalled President from acting. In his Consolidated Motions to Dismiss the Complaint; Answer and Counterclaim, the recalled President-defendant asserted, in Paragraph 2(a) thereof, that the relief sought affected the Association, which being an indispensable party to the action, nevertheless had not been made a party. The District Court subsequently granted motion of the plaintiffs in that case to amend their complaint by adding to the title the words:

"and for and on behalf of the members"

and by making similar insertions to the body of the complaint. The defendant then answered denying *(inter alia)* that plaintiffs represented the members of the Association.

The special master to whom the Talton case was referred concluded that the members of an unincorporated association may sue or be sued under Rule 23 in a class action, where the necessary conditions to a class exist; that, in fact, the right to bring a class action to enforce the liability of an unincorporated association existed long prior to the adoption of Rule 23; that an unincorporated association might sue and be sued in equity in a class suit brought by or against a representative of the class, and that this was an application of the settled general rule concerning class actions. Tunstall v. Brotherhood, 4 Cir., 1945, 148 F.2d 403, 405; Barron & Holtzhoff, Federal Practice & Procedure, Rules Edition, Vol. 2, p. 158, Section 563. He found that the plaintiffs in Talton had a right to bring a class action for the membership as a whole. In defendant's objections to the special master's report, he challenged the finding that this was a proper class action for the benefit of the membership as a whole.

The recalled President-defendant had filed a counterclaim to enjoin the plaintiffs in Talton from holding out another as the Association's President. The District Court, contrary to the recommendations of the special master, entered judgment as prayed in the counterclaim. The District Court did adopt the special master's findings as to jurisdiction, including the finding that this was a proper class action for the benefit of the membership as a whole. However, the District Court found that the President-defendant was the duly qualified and acting President of the Association and that the recall action had been invalid and void.

It was that judgment which was reversed by this Court on the ground that the governing law of the Association had been properly amended to provide for recall by the method used. It does not

appear from this Court's opinion nor from the briefs in Talton that the issue, of whether the Association was or was not an indispensable party, was submitted to this Court.

Plaintiffs in the matter before us argue that there is no problem of any essential party missing because plaintiffs themselves represent 85% of the members. It is plaintiffs' position that the Capital and Eastern pilots, whom plaintiffs do not represent, are not necessary parties and have no standing here, having been (as indicated) unjustly enriched and having failed to offer restitution.

But the fact remains that the funds to be applied by way of credit on future dues are funds of the Association. All parties having a material interest in the subject matter of a suit, which subject matter will be affected by the decree to be rendered, are indispensable parties. The Association here is an indispensable party. Olson v. Miller, 1959, 105 U.S.App.D.C. 55, 263 F.2d 738, 740; Fitzgerald v. Haynes, 3 Cir., 1957, 241 F.2d 417, 419; Underwood v. Maloney, 3 Cir., 1958, 256 F.2d 334, 338, certiorari denied 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed. 2d 97.

Although the action in the Court below was properly dismissed for lack of an indispensable party, among other reasons, we have also given attention to the numerous other contested issues raised by the parties with respect to the merits of this case, and will briefly refer to some of these.

This Court must accept the findings of fact of the District Court unless we find them clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure. A close study of the record shows these findings to be supported by substantial evidence and indicates no basis for holding them clearly erroneous.

In Talton v. Behncke, supra, this Court considered this same Association and concluded (199 F.2d 473):

"An unincorporated society such as this, so far as procedure is concerned, has no governing law other than and except its Constitution and By-Laws which constitute a binding contract between all the members and officers. Elevator Operators, etc., v. Newman, 30 Cal.2d 799, 186 P.2d 1. Whether such an association acts properly is to be determined by the authority granted, not by virtue of any statute but by virtue of the Constitution and By-Laws under which it exists and by which the propriety of all its actions is measured. By this compact, plaintiffs, defendant and all other members were bound. Consequently, in examining the validity of the actions of the Board of Directors, we can have recourse only to the question of whether the Constitution and By-Laws authorize the action taken."

In addition, as the special master found in the case before us:

"88. All members * * * including the plaintiffs, at the time of joining the union signed applications that included the following agreement:

"I hereby certify that I have read the By-Laws of the Air Line Pilots Association, International, and fully understand them.

"For good and valuable considerations received I herewith accept and agree to abide by the By-Laws of the Air Line Pilots Association, International, as they are now in force, or as they may be hereafter amended, changed, modified or adopted by the Board of Directors." (Plaintiffs' Appendix, p. 117)

When the question of whether Capital members should receive benefits was discussed, all the members of the board of directors were present and voted. (Finding 67, Plaintiffs' Appendix, p. 109) Plaintiffs allege that they improperly voted by voice vote, but the special master found that no delegate requested a standing or roll call vote, as provided for in the Constitution and By-laws, or

796

objected to Capital members' participation.

With reference to the Eastern benefit on which the directors voted by mail, the special master found:

"77. The Board of Directors of the Pilots' Union, which under Article VII, Section 1, is given power to interpret the Constitution and By-Laws, in 1948 officially made the following interpretation:

"'Any time a membership poll, survey, or voting procedure is employed on any issue, whatever, only those bona fide ballots or voting forms duly accomplished and returned to Headquarters shall be regarded as legal votes, and in no case shall a ballot or voting form not returned be regarded as a vote for or against the issue involved.'

"78. Again at the Biennial Convention of the Board of Directors of the Pilots' Union held in 1954, a resolution was adopted reciting that the union had followed the practice of basing a determination on a majority of the ballots returned and that in each such case, a statement had appeared on the ballot that the majority of ballots returned would govern; it was resolved that the association policy be implemented so that all ballots sent out from the Home office bear the statement 'A majority of the ballots returned on this issue shall govern.'" (Plaintiffs' Appendix, p. 115)

It does not appear that the letter accompanying the ballot, (Plaintiffs' Appendix, pp. 5–12) was misleading. The information allegedly suppressed concerned the tentative agreement with Eastern respecting one aspect of the crew complement issue, i. e. that in operation of pure jet aircraft, there would be a pilot in addition to the captain and co-pilot as part of the crew. (Plaintiffs'

Appendix, p. 67) The special master found that the Air Line Pilots Association News Bulletin of November 24, 1958, mailed to all members, had previously informed them of Eastern's position on this point. (Defendants' Exhibit 5, Plaintiffs' Appendix, p. 98)

We are constrained to agree with the District Court's conclusion that the assessments were valid and lawfully levied pursuant to the Constitution and By-laws of the Association for an object within the scope of that Constitution and those By-laws.

It further appears to us that the administrative remedies suggested by the Court below do include reasonable means available to plaintiffs which have not been exhausted.

It would unduly lengthen this opinion to no good purpose to comment on all of the arguments put forth by plaintiffs. We considered them with care and have found them without merit. The judgment of the Court below is affirmed.

SCHNACKENBERG, Circuit Judge, (dissenting in part and concurring in result).

I agree that the union involved is an indispensable party. However, the union was made a party plaintiff by means of the class suit filed by the named individual plaintiffs, pursuant to rule 23 (a) (1) of the Federal Rules of Civil Procedure. The parties are agreed that, according to Illinois law, the union, an unincorporated association, cannot be sued as an entity. It was error to dismiss plaintiffs' action for lack of an indispensable party. It is not absent; it is present in the case.

With some of the reasons given by Judge KNOCH (other than in reference to the presence of the union in the case) for affirmance, I concur and with some I disagree. However, I concur in the result affirming the judgment of the district court.