Henry ROTA, Individually, and for other members of Victory Lodge 2151 of the Brotherhood of Railway, Airline and Steamship Clerks

v.

BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS et al., Defendants.

Civ. A. No. 71–1538.

United States District Court, E. D. Pennsylvania.

Jan. 18, 1972.

Morris H. Wolff, Philadelphia, Pa., for plaintiff.

James L. Highsaw, Washington, D. C., John B. Nason, III, Philadelphia, Pa., for defendants.

OPINION

HIGGINBOTHAM, District Judge.

I.

*Background*

Plaintiff is in the unenviable position of having pled a cause of action but having failed to establish that he may pursue his cause of action in this district. He claims that the defendant union has, in a most flagrant manner, breached that Bill of Rights which was written into the Labor-Management Reporting and Disclosure Act of 1959. Plaintiff's substantive allegations, if true, clearly establish a breach of § 101 (29 U.S.C. § 411), but he must pursue his claim in another

forum because of the venue requirements of § 102 (29 U.S.C. § 412).

Plaintiff starts his scholarly brief by noting a Congressional Report which states:

"The relationship of the leaders of . . .´ [some trade] unions to their members has in some instances become impersonal and autocratic. In some cases men who have acquired positions of power and responsibility within unions have abused their power and forsaken their responsibilities to the membership and to the public". (H.R. Rep. on Landrum Griffin Act, 86th Cong. U.S.Code Cong. & Adm.News, p. 2428 (1959)

But, though the Congressional Committees were "shocked . . . at the corruption, greed and abuse of power found in parts of the American labor movement" (Nelson v. Johnson, D.C., 212 F. Supp. 233 (1963) commenting on Sen. Rep. No. 187, 86 Cong. 1st Session, pp. 5–7, 1959), that same Congress did not give plaintiff the venue rights he now needs. Thus, Congress limited his right, under the facts of this case, to prosecute his claim to either Illinois, the principal office of the international union, or at Miami, Florida, where the Convention took place.

In his behalf and purportedly for thousands of other union members, plaintiff claims that his "labor Bill of Rights" was breached flagrantly by events which took place at the twenty-fourth regular and tenth quadrennial convention of the Brotherhood of Railway, Airline and Steamship Clerks (hereinafter referred to as BRAC). The BRAC convention was held from May 24 through May 28, 1971, at Miami Beach, Florida; the principal office of BRAC, an international union, is 6300 River Road, Rosemont, Illinois. Henry Rota, the plaintiff, is a member of Victory Lodge 2151 (hereinafter referred to as the local lodge, or "local") of BRAC, brings this action on his own behalf individually and as a class action pursuant to rule 23 of Federal

Rules of Civil Procedure; plaintiff is a resident of Philadelphia, Pennsylvania.

Pursuant to Article 7, Section 1, of its Constitution; BRAC conducts its regular convention every four years, where matters of the utmost importance affecting the entire membership of over 200,000 are decided. Voting at the regular convention is conducted by a weighted voting system, whereby a voting delegate casts not only his vote, but the representational strength and size of his local membership. At the Miami Convention there were 1,235 delegates. They had been elected pursuant to the provisions of Article 6, Section 2(a) of BRAC's Constitution, which provides:

"Lodges of one hundred and fifty (150) or more members shall be entitled to elect one (1) delegate and one (1) alternate. The delegate to have the voting power of the lodge electing him, based on one (1) vote for the first one hundred and fifty (150) members and one (1) additional vote for each additional one hundred and fifty (150) members or major fraction thereof."

Thus, all delegates had a voting power commensurate with the size of their local lodge's total active membership.

Plaintiff maintains that on or about Friday afternoon May 28, 1971, at the Regular Convention a motion to amend the BRAC Constitution to increase the membership dues from the present $5.50 to $12.00 by July 1, 1973 was rejected at the Convention and was resubmitted to committee. Later, on Friday evening May 28, 1971, the motion to increase dues was again presented to the delegates in amended form which provided for a minimum increase to $11.00 per month, effective July 1, 1971.

Plaintiff further alleges that the latter dues increase was "gavelled" through in an undemocratic and dictatorial fashion, in violation of Labor-Management Reporting and Disclosure Act of 1959, popularly known as the "Landrum-Griffin

Act", specifically, Title I, Section 101 (29 United States Code, Section 411(a) (3) (B).[1] Plaintiff asserts that a roll call should have been taken but was refused by International President and Convention Chairman, C. L. Dennis. Defendants deny that such a roll call was required under the specific provisions of the BRAC constitution; on the contrary they argue that the "Special Convention" rule 14(b), gave the Chair the power to call a roll call vote at any time, but required a two-thirds vote of the delegates to hold a roll call against the wishes of the Chair.

## II.

### *Jurisdiction and Venue*

#### A. CAUSE OF ACTION

Plaintiff has asserted his Cause of Action under Section 101 (29 United States Code § 411(a) (3) (B), which reads in pertinent part:

"Equal rights.—*Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates*, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and *voting upon the business of such meetings*; subject to reasonable rules and regulations in such organization's constitution and bylaws.

(3) Dues, initiation fees, and assessments.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 *shall not be increased,* and no general or special assessment shall be levied upon such members, except—

(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) *by*

---

[1]. Pub.L. 36–257, Title I, § 101, Sept. 14, 1959, 73 Stat. 523 (29 U.S.C. § 411), hereinafter referred to as the "Act".

*majority vote of the delegates voting at a regular convention,* or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) *by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot. . .*"

Section (a) (1) of this section, the so-called "Bill of Rights" section, is an attempt to guarantee to each member an active and real voice in the decisional process of his Union. The purpose of this subsection [(a) (1)] is to preserve and protect a Union member's right to determine the amount of dues that he will pay; Subsection [(3) (B)] delineates the methods by which an international union can lawfully increase its dues, that is, "by majority vote of the delegates voting at a regular convention", or majority vote of the membership on a referendum conducted by secret ballot.

This section was thoroughly discussed in American Federation of Musicians v. Wittstein, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964). The issue in *Wittstein* was whether or not Section 101(a) (3) (B) prohibited the use of a weighted voting system; the Court held it did not, and went on to state that:

"It guarantees to union members, subject to reasonable rule and regulations . . . that *their dues and initiation fees will not be increased arbitrarily*".[2]

■ Thus, it is clear that plaintiff's complaint alleges[3] a cause of action under Section 101 (29 U.S.C. § 411(a) (3) (B)). It should be noted that the issue of a dues increase is one which the legislature attached special importance to and any alleged violation of this section

seriously undermines the purposes and policies of the Act.

## B. JURISDICTION

Any member of an international or national labor union has the right to sue for any violation by a labor union of any right granted him by Section 101 (29 U.S.C. § 411) of the Act. Jurisdiction for such a suit is found in section 102 (29 U.S.C. § 412) which provides:

"*Any person* whose rights secured by the provisions of this sub-chapter have been infringed by *any violation* of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) *as may be appropriate.*"

■ Clearly, any district court has subject matter jurisdiction to hear a violation under Title I of the Act. The problem, however, is one of Venue, and must be resolved by this Court before the merits of plaintiff's case can be reached, if at all. Vestal v. International Brotherhood of Teamsters, etc., 245 F.Supp. 623 (M.D.Tenn. 1965).

## C. VENUE

The Venue subsection of § 102 (29 U.S.C. § 412) reads as follows:

"*Any such action against a labor organization shall be brought in the district court* of the United States for the district *where the alleged violation occurred, or where the principal office of such labor organization is located.*" (emphasis added)

The nub of the venue problem in this case is the construction of the critical phrase "where the alleged violation occurred". If the alleged violation occurred in Philadelphia there is venue; if it did not occur in Philadelphia plaintiff has no venue here and thus no right to further litigate his claim in this court.

2. See remarks of Representative Griffin, 105 Cong.Rec. 15530; Vol. II, Legislative History: Labor-Management Reporting and Disclosure Act of 1959, p. 1566, hereinafter Leg.Hist., Vol. I, or II.

3. See plaintiff's complaints, Doc.Nos. 1, 3 and 20, filed June 21, 28, and July 26, 1971, respectively.

In determining the applicability of this subsection and the issue of proper venue, the operative facts are these: the Convention where the dues increase was effectuated and the events complained of occurred was held in Miami, Florida; the plaintiff and his local lodge are residents of Philadelphia, Pennsylvania, and as such the local dues are being collected from each of the plaintiffs on a monthly basis and from other members throughout the United States and Canada since August, 1971; "BRAC's" principal office is located in Rosemont, Illinois.

The word "occurred" means to present itself; come to pass; *take place, or happen.*[4] The immediate violation which plaintiff complains of is the alleged autocratic and undemocratic procedures that took place on the floor of convention, in Miami,[5] Florida. However, plaintiff argues that the impact of the violation is a continuing one, to wit, each monthly collection of the membership dues is a direct act occurring in this district and as such venue is proper in this Court. Alternatively, at the argument of this case,[6] plaintiff asserts that this court has under its "plenary power" to hear any constitutional due process claim presented to it as a matter of federal law. The problem with this so-called "due process" claim asserted by plaintiff is that his cause of action is one under § 101 [29 U.S.C. § 411(a) (3) (B)], thus the jurisdiction and the venue of this court is restricted by the language of § 102 (29 U.S.C. § 412).

■ If there were no legislative history a literal reading of the words "where the alleged violation occurred" would seem to mean in this case Miami, Florida, where the dues increase was "approved" and voted on. Yet, the legislative history may make the obvious unwarranted and might require another construction. Boston Sand and Gravel Co. v. United States of America, 278 U.S. 41, at 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928). Moreover, one may resort to explanatory legislative history "no matter how clear the words" of a statute may appear on a superficial examination. Harrison v. Northern Trust Co., 317 U.S. 476, at 479, 63 S.Ct. 361, 363, 87 L.Ed. 407 (1943).

## D. LEGISLATIVE HISTORY

The first "Bill of Rights" provisions (now Title I of the Act) offered as a means of protecting the "rank and file" membership by allowing him (her) to sue in his own right, was introduced by Senator McClellan who was the Chairman of the Senate's Select Committee on Improper Activities in the Labor-Management Field; his bill, S. 1137, was introduced and referred to committee.

Although this bill was never reported out of Committee,[7] Section 415(b) (Jurisdiction, Venue, and Service of Process) of that proposed act read as follows:

"For the purposes of actions by or against labor organizations or their officers, agents, or representatives, in the district courts of the United States under the provisions of this Act, *district courts shall be deemed to have jurisdiction of the labor organization, its officers, agents, or representatives (1) in the district in which such organization maintains its principal offices, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for members,* or conducting the affairs of a constituent organization over

---

4. Webster's Third New International Dictionary, Unabridged, (1964), (emphasis added).

5. See Plaintiff's complaint, footnote 3, supra.

6. Interestingly, plaintiff has filed an original and two amended complaints, and in none does he allege any acts that "occurred

here" in the Eastern District of Pennsylvania.

The collection of the dues increase was argued both in plaintiff's brief, and at oral argument held before me on September 17, 1971.

7. I. Leg.Hist. 260.

which it has assumed trusteeship." [8] (emphasis added).

Venue under this proposed bill clearly amounted to the concept of "doing business" and thus venue would have been very broad and extensive.

The Bill, however, that was reported out by the Committee on Labor and Public Welfare was the so-called "Kennedy-Ervin Bill," S. 1555; this bill provided no Bill of Rights section,[9] and so out of his concern about the purported corruption and autocratic policies of some labor leaders, Senator McClellan offered an amendment to S. 1555. The venue section of the McClellan proposal was adopted,[10] and provided:

"The Secretary, whenever it shall appear that any person has violated the provisions of this title, may bring an action in a district court or other court of the United States for such relief as may be appropriate including, but *without limitation, injunctions to restrain* any such violations and to compel compliance with this title. *Any such action against a labor organization may be brought in the United States District Court for the District of Columbia or in the district court or other court of the United States where the violation occurred or is about to occur.*" (emphasis added).

Under the latter version of Section 102 (29 U.S.C. § 412), the right of action was given to the Secretary of Labor, who could alternatively bring his cause of action in the District of Columbia, or in any district where the *violation occurred, or is about to occur.*

Senator McClellan's amendment to S. 1555, originally passed; a few days later, on April 24, 1959, Senator Kuchel introduced [11] a substitute amendment to replace the McClellan Amendment. This substitute for Senator McClellan's amendment [12] provided:

"Sec. 102. Any person whose rights secured by the provisions of this title have been infringed may bring an action in a district court of the United States for such relief as may be appropriate. *Any such action against a labor organization shall be brought in the U. S. District court for the district where the alleged violation occurred, or where the headquarters of such labor organization is located.*" [12a] (emphasis added)

In this latter version of section 102 the right of action is given directly to any aggrieved union member, rather than to the Secretary of Labor, as did McClellan's Amendment. Venue for any action under Title I was now restricted to a court where the "alleged violation occurred" or the "headquarters" of the labor organization. Commenting on the difference between his proposed substituted amendment and that of Senator McClellan's, supra, Senator Kuchel stated: [13]

"As will be recalled from my earlier comments, here is one of the major changes in the proposal. The amendment of the Senator from Arkansas provided that the Secretary of Labor might, on behalf of the injured or aggrieved member, have the right to litigate the alleged grievance and to seek an injunction or other relief. *We believe that giving this type of right to the aggrieved employee member himself is in the interest of justice, and therefore we propose to eliminate from the bill the right of the Secretary of Labor to sue in his behalf.*" (emphasis added)

\* \* \*

Further, in regard to his reason for offering his substitute, he stated:

"I have participated in this redraft, not for the purpose of weakening or limiting such rights, but only for the

---

8.   I. Leg.Hist. 320–321.

9.   I. Leg.Hist. 338–396.

10.  II. Leg.Hist. 1102, at 1119.

11.  II. Leg.Hist. 1220.

12.  *Id.*, p. 1239.

12a. *Id.*, p. 1232.

13.  *Id.*, p. 1232.

purpose of eliminating the necessary provisions which would only harass and obstruct the achievement of that end. . . . The redrafting of the bill has improved the guarantees of the fundamental rights which we were seeking to have included in the bill. *We have not altered the objective sought by the distinguished Senator from Arkansas.* I believe that the bill has not been weakened but, instead, improved for the benefit of working people and for the benefit of the public at large." [14] (emphasis added).

This final version of Section 412, dealing with venue was passed on April 25, 1959 and referred to the House of Representatives on April 27, 1959, and received by the House Committee on Education and Labor.[15]

In the House of Representatives there was a proliferation of Labor-Management Relations Bills, but the Landrum-Griffin Bill prevailed.[16] In the words of Senator Kuchel, author of the Senate version, and one of the conferees: "The Landrum-Griffin bill adopted substantially the same bill of rights language" as the bill he had authored in S. 1555. The adopted House version of the "Bill of Rights" provision and specifically § 102, provided:

"Sec. 102. Any person whose rights secured by the provisions of this title have been infringed may bring an action in a district court of the United States for such relief as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the al-

leged violation occurred, or where the [principal office] of such labor organization is located."

The only difference in language, it will be noted, between the Senate and House version is in the use of the words "principal office" for "headquarters", and "United States" district court is simply changed to "in a district court of the United States"; the changes in language are not significant in terms of statutory meaning but they do evince a clear pattern of legislative refinements of language, which must imply legislative consideration of the crucial phrase, "where the alleged violation occurred". This phrase has appeared in all versions of the civil enforcement section, now § 102 (29 U.S.C. § 412). This conclusion is buttressed by the fact that the language in the first civil enforcement section, now 102, originally amounted to a "doing business concept" of venue and a right of action granted to the Secretary of Labor,[16a] to what, in its final form is a very limited and restricted one, restricted in two places, viz., venue may be properly laid in any district where the *"violation occurred"*, or at the "principal office" of the union. By constantly restricting and narrowing venue as it did there is a direct manifestation that the legislature did consider the matter of venue and chose to restrict it.

### E. JUDICIAL CONSTRUCTION OF § 412

The instant case is significantly dissimilar to the precedents relied on by plaintiff. Plaintiff's complaint fails to allege any act which occurs in Philadelphia *other* than the monthly collection of

---

14. *Id.*, p. 1233.

15. II. Legis.Hist. p. 1481, § 102 (29 U.S.C. § 412). It read as follows: "Any person whose rights secured by the provisions of this title have been infringed may bring an action in a district court of the United States for such relief as may be appropriate. Any such action against a labor organization shall be brought in the [United States] District Court for the district where the alleged violation occurred, or where [the headquarters] of

such labor organization is located." The changes to this version (in brackets) as passed were minimal by the house, and will be discussed, infra, pp. 1182–1183.

16. II. Leg.Hist. 1527, 1691–1692.

16a. The Court is aware that this first bill was never reported out of committee, and the Court is also aware that the same author did not include this same "doing business concept" of venue in his adopted amendment to the Kennedy-Ervin bill, S. 1555.

the increased dues from Philadelphia members. Union dues are as essential for the financial viability of a union as the blood is to the heart. Congress did not preclude the collection of dues, it merely precluded the collection of dues when those dues had been "arbitrarily" increased in an undemocratic fashion. Thus, stripped of its conclusionary allegations, plaintiff's case rises or falls on the fact that the dues, which are now collected, were originally authorized by a purported autocratic or dictatorial procedure employed at the Miami Convention. The convention never met in Philadelphia, there was no ratification in Philadelphia, there is no nexus between Miami and Philadelphia other than the mere collection of the dues which had been authorized in Miami. The policy implications of plaintiff's position are extraordinary, for if the implementation of the Miami Convention's dues increase grants venue in this court, then every union member throughout the land has the right to file suit in any district court where the dues are paid or collected. The authoritative decisions evaluating the applicable statute have not reached the breadth of plaintiff's request and in fact they negate plaintiff's demand. To accept plaintiff's impact theory of venue would be to sanction and encourage multi-district litigation throughout our nation and in any federal district court where union members reside and feel aggrieved by a purported violation of the statute at the union convention.

Coleman v. Bro. of Railway Steamship Clerks, etc., 228 F.Supp. 276 (S.D.N.Y. 1964) affirmed on other grounds, 340 F.2d 206 (2 Cir. 1965) is in many respects analogous to the instant case, in that the acts or events which the plaintiff complained of there, as here, occurred during the course of the Brotherhood's twenty-second (22) Regular and Eighth Quadrennial Convention. The convention was held in Los Angeles, California, where resolution 611 was discussed and passed by the delegates. Plaintiff there asserted, *inter alia*, that the resolution was passed in violation of the rights guaranteed to him by Section 101 (29 U.S.C. § 411(a) (1),[17] to have an equal "rights and privileges" to nominate and vote at a union convention. The Court held the challenge to a past election could only be done by filing a complaint with the Secretary of Labor as provided by Section 403 of Title IV, (29 U.S.C. § 483). The court went on to hold and state:

> "There are additional reasons why the complaint must be dismissed. Venue in this district of a claim under Title I is *improper* since any action under Title I *must be instituted in the district where the alleged violation occurred.* (Resolution No. 611 was passed and defendant Harrison was elected Chief Executive Officer in Los Angeles, California), or where *the principal office* of the [union] is located (which plaintiff alleged to be Cincinnati, Ohio)", 228 F.Supp. at page 284. (emphasis added)

It is interesting to note, at this point, that the crux of plaintiff's allegations in this case is the purported autocratic and undemocratic procedure used at the Miami Convention. Clearly, the only event occurring in Philadelphia is the collection of additional dues from the local membership, in accordance with the "decision" made at "the Miami Convention". Plaintiff argues, however, that the dues increase is being applied in this district and thus the violation of § 101 (29 U.S.C. § 411) is "occurring in this district" on a continuing basis.

Plaintiff relies on the case of Giordani v. Upholsterers International Union of North America, 403 F.2d 85 (2 Cir.

---

17. Section 101(a) (1) reads: "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

1968). It is my opinion that *Giordani* is distinguishable from plaintiff's case notwithstanding some of the language cited by plaintiff from that case.[18] In that case, defendant, union, was an international with over 200 local unions; its principal office was in Philadelphia and plaintiff was a member of local 44 of New York City. Plaintiff charged certain union officials with the misappropriation of union funds. A short time later, plaintiff was charged by local union member (in New York) of violating the laws of the international union, to wit, false accusation against a union officer. Plaintiff was found guilty of the charge, after a *hearing in New York*, and *the hearing officer recommended his expulsion*; this decision was adopted by the General Executive Board (at Philadelphia). Plaintiff then instituted his action in the district court of the Southern District of New York. The Court, held that venue was properly laid in N. Y., and went on to state, at page 87:

"We believe that the term 'violation' should not be so narrowly construed. The internal deliberations of the Board alone constituted no violation of the Act; rather, the Board's decision is challenged because its purpose and *effect were to chastise Giordani for the exercise in New York of what he claims to be his protected rights.* See Vestal v. International Brotherhood of Teamsters, etc., 245 F.Supp. 623 (M.D.Tenn.1965). Where, as here, a member charges that his union has interfered with his rights under the Act, *that interference must be said to have occurred where it actually took effect upon the member*, not where the union determined its plan of action. *Moreover, in this case, significant steps in the process leading to Giordani's expulsion were effected within the district.*" (emphasis added)

This language must be taken in light of the facts of *Giordani*, that is, Giordani made all his charges from New York; the charges against Giordani were brought by members of the New York local; the initial report recommending expulsion and *the hearing were held in New York*. In short, the facts of *Giordani* show that substantial acts took place in New York City, thus events which had a direct effect upon plaintiff's rights occurred in New York City. Once again, plaintiff fails to allege any acts other than the collection of the monthly dues which took place in Philadelphia. Indeed, the gravamen of plaintiff's allegation[19] is not the payment of dues or the amount thereof, but rather plaintiff's complaint is against the purported autocratic, dictatorial and undemocratic procedure employed at the Miami Convention. The issue raised by the plaintiff and the events determinative of that issue certainly occurred in Miami, not Philadelphia. The collection of the dues is not in and of itself a violation of Section 101; to my mind it is merely the administrative implementation of an act which initially occurred in Miami, Florida.

In Vestal v. International Brotherhood of Teamsters, etc., 245 F.Supp. 623 (M.D.Tenn.1965), the principal offices of the Union were in Washington, D. C., and Detroit, Michigan; plaintiffs commenced their action in the district court of the middle district of Tennessee. Thus the court stated "venue is proper only if the alleged violation occurred in this district".[20]

In construing the crucial phrase of the venue provision as to where the alleged act occurred, the Court said: "This, in turn, depends on what the alleged violation is." And so it is in our case. Under the salient facts of our case, the violation, if any, clearly occurred at the

---

18. See plaintiff's trial brief, page 15, quoted at page 18, infra.

19. See plaintiff's original Complaint (Doc. No. 1) and his amended Complaints (Doc. Nos. 3 and 20).

20. *Vestal*, at page 625.

Miami Convention. In *Vestal,* supra, the Court was faced with the problem of where the violation occurred in terms of two alternatives: The Union contended that the violation occurred when and *where* the "International" construed its constitutional provision against the plaintiff, that is, at its principal office (Detroit, Michigan). Plaintiff resided and initiated his cause of action in Tennessee. The court noted that the Constitution could not be interpreted in a vacuum, and went on to state:

"To say that the 'interpretation of the Constitution did not occur in this district is to ignore the fact that the *interpreted constitution, as applied, vitally affects the rights, duties and actions of plaintiffs.*" (p. 625) (Emphasis added.)

Plaintiff cites this language in support of his contention that venue is proper in this Court where the dues are presently being collected. Plaintiff's case is not *Vestal,* it is clearly distinguishable. In *Vestal,* the *request* for a separate charter was initiated within the District Court where the action was brought; defendants required plaintiffs to *submit membership list* of the Local to the International. The *request* and *petitions* for a separate charter were initiated from plaintiff's district; the International sent its *agent into the district* to actively conduct the referendum. Moreover, the Court stated that to dismiss the action (in *Vestal*) would remove it to an area "far removed from the actual scene of the controversy." Thus, the court concluded that venue was proper because the activities of the defendants had a direct effect and occurred in the judicial districts where plaintiffs instituted their cause of action.

In the course of its opinion, the Court in *Vestal,* supra, distinguished the case of Lodge No. 42 of the Intern. Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers (Parkhurst) v. International Brotherhood of Boilermakers, Etc., 324 F.2d 201 (6 Cir. 1963). In *Parkhurst, supra,* the local lodge (located outside the district), requested the International (located outside the district) to disaffiliate a local lodge (located in the district) from international membership. The Court noted in *Vestal, supra,* the request for a separate charter was initiated from within the district, whereas in *Parkhurst,* neither of the defendants had done *"any"* acts within the districts. In our case the only acts done in this district have been acts which have implemented the action authorized by the Miami Convention. This case falls somewhere between the cases of *Coleman, Giordani,* and *Vestal* and *Parkhurst,* on a continuum of opposites, that is there is one act which clearly takes place in the Eastern District of Pennsylvania, which is the collection of dues. On the other hand, it is equally clear that the primary violation complained of in all of plaintiff's complaints is the purported *undemocratic and arbitrary procedures which occurred in Miami, Florida, on the Convention floor.* This case, factually, is closer to *Coleman, supra,* than any other and in my opinion that case controls and is dispositive.

The preceding conclusion is supported by (1) a textual construction of the pertinent language of the statute, (2) the relevant legislative history, (though it is not expressly clear on the meaning of the phrase here involved, it does manifest a pattern of restriction by the legislature), and (3) the relevant case law.

For all the foregoing reasons I conclude as a matter of law that venue is improper in this district.

### III.

#### Plaintiff's Right to Transfer

■ Although I have held that venue is not proper in this district, certainly the action could be transferred to the proper District Court of Illinois, wherein the principal office of BRAC is located or it could be transferred to Miami, pursuant to 28 U.S.C. § 1406(a). While instinctively it would appear that in the interest of justice and the practical needs of the parties and witnesses, the more

appropriate forum to transfer would be to Illinois. I decline to rule prematurely on this issue. Thus, plaintiff is granted the option to file a motion to transfer within ten days; upon failure to file such a motion to transfer, the matter will be dismissed.

## IV.

### *Counsel Fees*

 Since plaintiff has failed to establish venue, I decline, as a matter of discretion, at this stage to grant counsel fees, even though his action was taken in good faith. If it is ruled by an appellate court that plaintiff does have venue in this district, I will reconsider his petition for counsel fees; however, this rule is without prejudice to the transferee court, to compensate counsel for the time actually spent in the preparation of this case in this Court.