Henry ROTA and members of Victory Lodge 2151 of the Brotherhood of Railway, Airline and Steamship Clerks, Individually and on behalf of each and all other persons similarly situated, Plaintiffs,

v.

BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS et al., Defendants.

No. 72 C 914.

United States District Court,
N. D. Illinois, E. D.

Oct. 7, 1974.

Harold E. Stassen, Philadelphia, Pa., Shayle P. Fox, Chicago, Ill., for plaintiffs.

Robert S. Sugarman, Chicago, Ill., James L. Highsaw, Jr., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

### Introduction

This litigation involves an action by members of the Brotherhood of Railway, Airline and Steamship Clerks (BRAC) to invalidate a dues increase voted by the 24th Regular and Tenth Quadrennial Convention of BRAC on May 28, 1971. This cause is now before the Court on remand from a decision by the Court of Appeals for the Seventh Circuit; that court reversed an order granting defendants summary judgment on plaintiffs' claim under the Labor-Management Reporting and Disclosure Act. The underlying facts which form this controversy are set out in the Court of Appeals decision, Rota v. BRAC, 489 F.2d 998 (7th Cir. 1973).[1]

Four motions are now before the Court for ruling: (1) defendants have moved to strike certain allegations contained in Count I of plaintiffs' third amended complaint; (2) defendants seek to force plaintiffs to join the subordinate units of BRAC as indispensable parties under F.R.Civ.P. 19; (3) plaintiffs seek to have the Court take pendent jurisdiction over their state law claims; and (4) plaintiffs seek certification that this cause may be maintained as a class action pursuant to F. R.Civ.P. 23(b)(2) or in the alternative, pursuant to F.R.Civ.P. 23(b)(3).

### I.

### Section 101(a)(1) Allegations

Defendants have moved to dismiss plaintiffs' allegations in Count I of their third amended complaint under § 101(a)(1) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1).[2] In ruling on this motion, the Court is not writing on a clean slate. Originally this action was filed in the United States District Court for the Eastern District of Pennsylvania; that court determined that venue was improper there and transferred the case to this district. Before transfer, Judge Higginbotham, ruling on similar motion, held that the purpose of § 101(a)(1):

"is to preserve and protect a Union member's right to determine the amount of dues that he will pay; [§ 101(a)(3)(B)] delineates the methods by which an international union can lawfully increase its dues, that is, 'by

---

1. For an earlier opinion in this case which held that venue was proper in this district see Rota v. BRAC, 338 F.Supp. 1176 (E.D. Pa.1972).

2. Section 101(a)(1) reads: "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws." Section 101(a)(3)(B)(i) reads in pertinent part: "the rates of dues . . . payable by members . . . shall not be increased . . . except . . . by majority vote of the delegates voting at a regular convention. . . ."

majority vote of the delegates voting at a regular convention', or majority vote of the membership on a referendum conducted by secret ballot." 338 F.Supp. 1176, 1179 (E.D.Pa.1972).

Implicit in Judge Higginbotham's holding is the belief that the generalized due process requirements contained in § 101(a)(1) must be read into the more specific requirements of § 101(a)(3) (B). This Court disagreed:

> "Insofar as [plaintiffs'] arguments are based upon § 411(a)(1), they are clearly untenable, notwithstanding language in the transferring judge's opinion denying defendants' motion to dismiss. This case presents issues as to the propriety of actions taken at a regular convention of the international union. Section 411(a)(1) pertains only to the rights of members to nominate candidates, vote in elections or referendums, and attend and participate at membership meetings . . . this court will not stretch the language of sub-section (a)(1) to cover the facts here where Congress has dealt with actions of this nature elsewhere." [3]

On appeal, the plaintiffs challenged this Court's construction of § 101(a)(1) as well as the grant of summary judgment to the defendants on the § 101(a)(3)(B) claims. In remanding the case for a trial on the § 101(a)(3)(B) claims, the Court of Appeals stated: "Plaintiffs have raised additional issues which we need not decide . . . [w]e merely decide that it was error to enter summary judgment. After the actual weighted vote has been determined, it will be time to face whatever issue may remain for decision." 489 F.2d at 1004.

Although this statement seems primarily directed at whether the Court should take pendent jurisdiction over plaintiffs' state law claims, it is clear that the federal statutory construction issue remains open. The Court of Appeals noted, however, in analyzing § 101(a)(3)(B):

> "The statute does not undertake to specify the procedure that must be followed in voting on a dues increase. Necessarily, however, the word 'vote' connotes a fairly determined expression of the will of the union membership and a reliable and accurate count thereof." *Id.*

■■ It almost goes without saying that a "fairly determined expression of the will of the union" encompasses the procedural due process requirements contained within § 101(a)(1); a fair vote necessitates "reasonable rules and regulations" in conducting the Union's business with respect to all aspects of the dues increase controversy. Under these circumstances the protections guaranteed by § 101(a)(1) and § 101(a)(3)(B) appear to be coterminous.[4] Therefore, upon reconsideration, this Court holds that the instant

---

3. Unpublished memorandum opinion and order dated November 8, 1972.

4. Some support for this position is found in American Federation of Musicians v. Wittstein, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964). In *Wittstein*, the Supreme Court stated:

> "Section 101(a)(3)(B) is a part of Title I, entitled the 'Bill of Rights of Members of Labor Organizations.' This Title guarantees to every member of a labor organization equal rights and privileges to vote, to attend meetings, and to participate in the deliberations and business of such meetings. Section 101(a)(3)(B) forms a

part of this framework by requiring participation by all members, either directly or through their elected representatives, on certain union matters thought to be of special importance." 379 U.S. at 181, 85 S.Ct. at 306.

Thus, the Court recognized § 101(a)(3)(B) must be read in light of the Congressional intent to provide a package of rights for labor union members. In the instant case, that package includes not only the right to vote on the dues increase issue but the right to procedural due process with regard to adoption of reasonable rules and regulations concerning the vote.

action can be brought under § 101(a)(1) insofar as that section delineates the procedural safeguards required to guarantee that the rights granted under § 101(a)(3)(B) are protected. Defendants' motion to strike and dismiss plaintiffs' § 101(a)(1) allegations is therefore denied.

## II.

### Non-Joinder of Parties

■ Defendants have moved to join the intermediate Boards of Adjustment and Local Lodges of BRAC, under Rule 19, F.R.Civ.P., as parties necessary for a just adjudication of this action. According to the BRAC constitution, dues are collected only by the Local Lodges, which then remit a portion of the monies collected as a per capita tax to the Boards of Adjustment and to the International. The Amendment to Article 27 of the BRAC Constitution by the 1971 BRAC Convention, which is the subject matter of this action, provided for an increase in the minimum dues of each member of BRAC from $5.50 to $11.00 per month. Under Article 27 as amended by the Convention, only $2.10 of the monthly dues increase is payable as a per capita tax to the International Union, which is the named Defendant herein; $2.10 of the monthly dues increase constitutes a per capita tax which must be remitted to the intermediate Board of Adjustment. The remaining $1.30 of the monthly increase is retained by the Local Lodges. The Local Lodges and Boards of Adjustment depend upon the dues and per capita taxes collected for the continued fulfillment of their obligations under the Railway Labor Act, 45 U.S.C. § 151 et seq. The defendants assert that this action, which requests a refund of the increased dues already paid and a declaration that plaintiffs have no remaining obligation to pay further increased dues, has a substantial and direct impact on the interests of the Lodges and System Boards which received these monies and are anticipating and dependent upon future receipt of these monies.

Conceding that resolution of this action in favor of the plaintiffs could have a substantial economic effect on the subordinate units of the International Union, defendants have still failed to show that Rule 19 requires joinder of additional parties. The 1967 and 1971 International Union constitutions only set minimum dues schedules; each Board of Adjustment was allowed to fix uniform dues above the minimum membership fees required by the International Union, subject to the approval of the International president (who is a party to this litigation). Thus even if this Court finds that the action taken at the 1971 convention was improper, existing procedures provide a method for the subordinate units to raise additional funds for their own use if they so desire whether or not the International is required to roll back the minimum dues schedule to 1967 levels.[5] Defendants' claim that the Union's subordinate units would, by an adverse ruling against the International, be directly deprived of

5. These defendants' reliance on Eads v. Sayen, 281 F.2d 791 (7th Cir. 1961) and Fitzgerald v. Haynes, 241 F.2d 417 (3d Cir. 1957) is misplaced. In *Eads*, several union members sued their union's officers, praying for a credit against future dues without joining the union itself. The court found that when the dues were collected, they became the property of the union not the officers; therefore, the union was a necessary party. In this case, most of the increased dues collected by the subordinate units becomes the property of the International Union, which is a party to this action. Similarly, the plaintiffs in *Fitzgerald* sought to enjoin disposal of local union property without joining the local union. Here, however, the complaint is directed at preventing the International from enforcing its constitution; thus, the International has a primary interest in the outcome of this litigation while the subordinate units' interests are secondary at best since they are authorized to independently raise funds. *Cf.* Weihrauch v. IUE, 272 F.Supp. 472, 477 (D.N.J.1967).

their ability to collect the monies they require is not supported by the union constitution. Because these local units can raise their own funds, they are not indispensable parties, and defendants' motion for joinder of additional parties under Rule 19 is therefore denied.

### III.

### *Pendent Jurisdiction Over State Law Claims*

In Count II of their third amended complaint plaintiffs have sought to invoke the pendent jurisdiction of this court to determine, according to Illinois state law, whether the union's constitutional standard requiring a two-thirds weighted vote of the delegates for a dues increase was fulfilled. Defendants have moved to dismiss Count II under three separate theories: (1) since BRAC is a voluntary unincorporated association, it lacks capacity to be sued for damages at law in its association name; (2) the underlying operative facts set forth in Count II are insufficiently similar to those facts encompassing plaintiffs' federal claim that the *Gibbs* test is not satisfied; and (3) even if Count II was properly brought under the pendent jurisdiction theory, plaintiffs' state law claim raises no dispute as to an issue of material fact and defendants are entitled to summary judgment as a matter of law.

▆▆▆ Defendants' first argument, while a correct statement of Illinois law, does not apply to the instant action. Illinois courts have consistently followed the common law rule that precludes actions against unincorporated associations (as legal entities) for damages only. See, *e. g.*, Burkhart v. Illinois Power Co., 9 Ill.App.3d 139, 291 N.E.2d 673 (1973); Curtis v. Albion-Brown's Post 590, American Legion, 74 Ill.App.

2d 144, 219 N.E.2d 386 (1966); Cox v. Shupe, 41 Ill.App.2d 413, 191 N.E.2d 250 (1963).[6] Such associations can, however, sue and be sued in equity. Graham v. Board of Education, Comm. H.S. D.No. 77, St. Clair County, 15 Ill.App.3d 1092, 305 N.E.2d 310 (1973); Illinois Power Co. v. Latham, 15 Ill.App.3d 156, 303 N.E.2d 448 (1973). Damages can be sought in such equity actions under the theory of equity ancillary jurisdiction. Bayci v. Rango, 304 Ill.App. 203, 25 N.E.2d 1015 (1940). This expanded concept of equity ancillary jurisdiction is particularly relevant since all distinctions between law and equity have been abolished in both Illinois and federal courts and since the 1970 Illinois constitution provides that the "Circuit Courts shall have original jurisdiction of all justiciable matters. . . ." Ill. Const. 1970, Art. VI, Section 9, S.H.A.; see also Illinois State Employees Ass'n v. McCarter, 9 Ill.App.3d 764, 292 N.E. 2d 901 (1973).[7] In the instant case the primary relief sought is equitable in nature (an injunction and declaratory judgment); an Illinois state court would find such an action justiciable and thus this Court does have the power to adjudicate this controversy even if BRAC, an unincorporated association, is sued as a legal entity. Damages, if appropriate under Count II, can be granted under the ancillary jurisdiction theory.

The defendants also contend that Count II should be dismissed because the requirements for the exercise of pendent jurisdiction, as articulated by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), are not met. *Gibbs* requires that the pendent claim must "derive from a common nucleus of operative facts" as the federal claim before the Court will take jurisdiction.

---

6. Since Count II encompasses a state law claim, the capacity of an association to sue or be sued is to be determined by the law of the state in which the district court is sitting. F.R.Civ.P. 17(b).

7. *Contra:* Boozer v. United Auto Workers of America Local 457, 4 Ill.App.3d 611, 279 N.E.2d 428 (1972).

The pendent claim here is basically a breach of contract action; the BRAC constitution acts as a contract between the union and its members. Plaintiffs contend that this contract was breached when the dues increase was instituted with an alleged less than two-thirds weighted vote approving the increase as required by the BRAC constitution. The federal claim under the Labor-Management Reporting and Disclosure Act, as noted above, also involves a count of votes necessary to approve the dues increase. Under the federal claim, only a simple majority vote is necessary to approve the dues increase.

Absent the peculiar status of labor unions in both federal and Illinois jurisprudence there would be little question but that plaintiffs' state law claim was within the pendent jurisdiction of this Court. Defendants note, however, that it is a well-settled rule that courts interfere with the internal proceedings of a voluntary association only with great reluctance and under extreme circumstances. See, e. g., Rosee v. Board of Trade, 311 F.2d 524 (7th Cir. 1963). Moreover, when a member joins a voluntary association he agrees to be bound by the governing rules of the association. See, e. g., Parsons College v. North Central Ass'n of Col. & Sec. Sch., 271 F.Supp. 65 (N.D.Ill.1967). Defendants thus contend that the nucleus of operative facts under Count II involves only a determination that the proceedings at the BRAC convention conformed to a reasonable interpretation of the language of the BRAC constitution and not a recount of the votes cast under those procedures.

■■ Defendant's interpretation of Illinois law is too narrow. Illinois state courts do follow the general policy against judicial interference with the internal policies of labor unions:

"But a court of equity will interfere where it appears the provisions of the [union] Constitution have not been observed, where the association, its of-ficers, or tribunals are not acting within the scope of its or their powers or in accordance with the Constitution. . . . Further, where the controversy concerns money or property rights or demands, as distinguished from matters of discipline, policy, or doctrine, the right to resort in a proper case to a court of equity will not be abridged by provisions of the organization's Constitution, and particularly in such cases a court of equity may so far inquire into, review, and supervise the action of the association, its officers, or tribunals as to determine whether they have proceeded in accordance with the Constitution and if they have failed in some substantial manner, it may correct any abuses which may result from such unwarranted procedure."

O'Brien v. Matual, 14 Ill.App.2d 173, 197–198, 144 N.E.2d 446, 458 (1957). Under Illinois law, plaintiffs are thus entitled to judicial protection of both the procedural and substantive rights granted by the union constitution; not only must the procedures followed by the BRAC convention conform to the procedural requirement of the BRAC constitution, but the vote on the dues increase must in fact have met the two-thirds approval requirement contained in the union constitution. Since the number of delegates actually voting for the dues increase operates as a common nucleus of fact, Count II is appropriately within the pendent jurisdiction of this Court. Moreover, judicial economy, convenience and fairness require this Court to exercise its discretionary jurisdiction over the pendent claims. Additionally, here a state law claim is closely tied to questions of federal policy, and expeditious action is needed, making the argument for exercise of pendent jurisdiction particularly strong. United Mine Workers v. Gibbs, *supra*.

■ Defendants' third argument also fails; summary judgment under Count II is inappropriate. The Court of

Appeals found that a genuine issue of fact remained as to how many delegates to the BRAC convention voted for the dues increase; this issue is central to both Count I and Count II; therefore, defendants' motion for summary judgment on Count II is denied.

## IV

### Class Action Status

Plaintiffs have moved for an order declaring that this cause can be maintained as a class action. Plaintiffs seek a class consisting of all members of BRAC who, since July 1, 1971, have been and continue to be compelled to pay additional dues. Three issues are presented by this motion: (1) can this cause be brought as a Rule 23(b)(2) class action or must it be brought as a Rule 23(b)(3) class action; (2) what type of notice, if any, should be given to class members; and (3) do the conflicts inherent in litigation arising from an internecine union squabble preclude designation of a union-wide class representative.

At the outset the Court notes that it is clear that class actions can be maintained for a violation of § 101 rights. Connors v. Teamsters Local 107, 378 F.Supp. 1069 (E.D.Pa.1974); Sertic v. Cuyahoga, Lake, Geauga & Ashtabula Cos. (D.C.), 423 F.2d 515 (6th Cir. 1970). Moreover, it seems clear that in the instant case the requirements of F.R.Civ.P. 23(a)(1)–(3) are fulfilled. Specifically, the class is so numerous that joinder of all members is impracticable; the claims of the named plaintiffs are typical of the claims of the class; and there are questions of fact and law common to the class.

Whether the named plaintiffs will adequately and fairly represent the interest of the proposed class as a whole, as required by F.R.Civ.P. 23(a)(4) presents more difficult problems, however. Defendants contend that conflicts within the union exist such that plaintiffs cannot adequately represent the whole union membership.

The record of the convention proceedings demonstrates that a substantial portion of the delegates to the convention voted for the dues increase. Plaintiffs assert that even ·though they seek to represent all union members, including those who took opposing positions at the convention, no conflict exists because all union members are presumed to be interested in, and in favor of, protecting their statutory rights. However, the Court need not depend on this presumption or the possible due process questions such a presumption may raise. In the present case there is an easier solution; from the outset of this litigation the individually named defendants have actively supported the position of this second group of union members. "Therefore, while it is not true that plaintiffs, as they would claim, represent all [union members], it is true that any whom they do not represent are represented by the defendants." Dierks v. Thompson, 414 F.2d 453, 457 (1st Cir. 1969). Thus, the requirements of due process and Rule 23(a)(4) are met, plaintiffs can adequately represent all members of the union (subject of course to the right of unnamed plaintiffs to intervene see page 708, infra).

Turning to the question of whether this case is more properly brought as a Rule 23(b)(2) or 23(b)(3) class action, the Court finds that insofar as plaintiffs seek an injunction against further collection of the purported 1971 dues increase and a declaration that the increase was invalid, Rule 23(b)(2) provides the proper procedural vehicle to continue the litigation. Rule 23(b)(2) provides that an action may be maintained as a class action if (presuming the prerequisites of Rule 23(a) are satisfied, as they are here), the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the

class as a whole. Thus, (b)(2) was not intended to apply where the appropriate final relief relates exclusively or predominantly to money damages. In the instant case, even though there is a claim for money damages, the primary relief sought is injunctive. If the dues increase is found illegal, plaintiff will have proven that the union uniformly and simultaneously violated the rights of its members as a whole, making appropriate final injunctive relief with respect to the class as a whole. Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971). Thus, the requirements of a 23(b)(2) class are met.[8] However, following the example of the court in Connors v. Teamsters, Local 127, *supra*, the Court will reserve decision as to whether this action should be certified as a class action with respect to the claim for reimbursement of funds collected pursuant to the dues increase.[9] As the *Connors* court noted, the reimbursement claim presents more complex factual and legal issues than the demand for injunctive relief. Any injunctive order entered in this case will necessarily operate in favor of the entire BRAC membership while a monetary reimbursement award may depend on whether a member waived his rights by approving the dues increase. Until such issues are briefed and the outcome of the claim for injunctive relief is determined, the Court will reserve ruling on whether this action can proceed with respect to the claim for monetary relief.

Defendants assert that even if this action is certified as a Rule 23(b)(2) class, plaintiffs are required to give individual mail notice to all members of the class. Although Rule 23(c)(2), which requires such notice, by its terms is inapplicable to class action for injunctive or declaratory relief, this circuit has ruled in Schrader v. Selective Serv. Sys. Loc. Bd. No. 76 of Wis., 470 F.2d 73 (7th Cir. 1972), that some type of notice to all class members is required in all class actions. The Supreme Court decision in Eisen v. Carlisle & Jacquelin, *supra*, however, emphasizes that such notice, if required in (b)(2) actions need not always include individual mail notice to each class member. Footnote 14 at 94 S.Ct. 2152 expressly limits the Court's holding that individual mail notice be sent to all class members who can be identified with reasonable effort to Rule 23(b)(3) class actions. Other methods of notice, if comporting with the standards of due process articulated in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), may be sufficient in Rule 23(b)(2) class actions. Here the most effective method of communication between a union and its members is through the union newspaper, plant bulletin boards, and union meetings. To guarantee impartiality of the notice process here, the first two of these vehicles should be used. In this connection, it should be noted that the Seventh Circuit in Fujishima v. Board of Education,

---

8. This decision comports with the generally accepted policy that if an action can be maintained under Rule 23(b)(2) and also under Rule 23(b)(3), the court should order that the action be maintained as a (b)(2) action. See, *e. g.*, Mungin v. Florida East Coast Ry., 318 F.Supp. 720 (M.D.Fla.1970), aff'd, 441 F.2d 728 (5th Cir. 1971).

9. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974), teaches that the court must rule on whether a suit may be maintained as soon as practicable after the commencement of the action, and this determination should be made without inquiry into the merits of a proposed class action. The procedure estab-

lished here follows the mandate of *Eisen*. A determination has been made creating a class for injunctive purposes without regard to the merits; a ruling on this portion of the litigation will not cause undue prejudice nor lengthen the statute of limitations for a determination of liability on the damage issue. *Cf.* American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Until the injunctive portion of the case is determined, this Court cannot determine whether there are questions of law or fact common to the class as respects damages. Rule 23(c)(4)(A) recognizes that in certain cases such bifurcated procedures may be desirable.

460 F.2d 1355 (1972) held that under Rule 23(d)(2), such alternative methods of notice are sufficient in (b)(2) class actions.

The Court therefore orders that:

(1) This action may proceed as a class action as to the request for declaratory and injunctive relief against the dues increase under F.R.Civ.P. 23(b)(2);

(2) The class shall consist of all members of BRAC except the defendants named herein;

(3) Plaintiffs' counsel shall prepare within thirty (30) days of the date hereof proposed notices to be sent to members of the class. Because of the nature of this suit, a provision allowing class members to intervene should be included. F.R.Civ.P. 23(d)(2)–(3). Rosen v. Bergmen, 10 F.R.Serv.2d 23a.3 Case 2 (S.D.N.Y.1963);

(4) The question of certification of this action on the request for money damages is stayed until the disposition of the request for injunctive relief.

It is so ordered.